## CIRCUIT COURT OF THE CITY OF RICHMOND

Samuel Gray Bullock

v.

John D. Netherland, Warden

February 2, 1995

BY JUDGE WALTER W. STOUT, III

In this action, Samuel Gray Bullock filed a petition for a writ of Habeas Corpus on July 18, 1994. This petition contests the legality of his convictions for two indictments of malicious wounding tried before a jury on February 24 and 25, 1992. Subsequent appeals by the defendant were denied by the Virginia Court of Appeals on February 17, 1993, and by the Virginia Supreme Court on August 13, 1993. Bullock was sentenced to fifteen years with five years suspended, which he is currently serving.

The incident that resulted in Bullock's convictions took place on August 9, 1991. Bullock and a friend, Patrick Eric Caywood, became involved in an altercation with two individuals, James Christopher Owens and Jeffrey Tunstall. Specifically, Bullock was fighting with Tunstall, and Owens was fighting with Caywood. Shortly after the fight began, Caywood broke off from his fight with Owens and ran back towards his truck. Owens then turned and began to break up the fight which was continuing between Tunstall and Bullock. Caywood returned to the scene armed with a knife.

At this point, the evidence is in controversy. Owens testified that Caywood stabbed him in the stomach and that he immediately yelled to Tunstall to run. Owens does not remember anything after that point in time. However, Tunstall testified that he was stabbed by Bullock and then Bullock left him to go to Owens. Tunstall heard Owens yell a "horrible scream" after Bullock moved towards Owens.

Officer Linda Matthews stated that when she approached the scene, she saw Bullock on top of Owens hitting him while Tunstall and Caywood were fighting up against a fence. When Officer Matthews commanded them to stop fighting, she testified Caywood fled the area and was subsequently arrested. She also testified that Bullock approached her yelling

"go ahead, shoot me." Both Owens and Tunstall received multiple stab wounds.

The petitioner raises seven issues which he alleges constitutes ineffective assistance of counsel in the preparation and defense of his case.

The first issue presented is that defense counsel failed to file a motion for discovery and that the failure to do so resulted in prejudice to Bullock. If defense counsel had requested discovery, he would have received a photograph from the Commonwealth's file of Bullock on the night of his arrest. In the photograph, Bullock did not appear to have blood on him, and he was wearing a pink tank top. Bullock asserts that because the photograph showed that he was not covered with blood, the jury would have determined that he could not have been the one who stabbed the victims. The photograph would also have shown that Officer Matthews was confused as to which person was fighting with the victim because she erroneously identified Caywood as the person wearing the pink tank top.

It is accepted as fact that defense counsel failed to make a discovery motion and that if such a motion was made, the defense would have received the photograph of Bullock. A request for discovery is a routine request to be made by counsel for the defense, and it should have been done in the present case.

The failure of defense counsel to make a request for discovery did not result in prejudice to the Defendant. The Court notes from Bullock's own testimony that he was covered with blood. (Tr. at 212.) He further testified at the Habeas hearing that no blood had been wiped off of him. In light of Bullock's appearance in the photograph, these two statements cannot be reconciled. Because of the conflict in Bullock's own testimony, the inferences which would flow from the admission of the photograph is insufficient to establish the required prejudice to set aside this verdict.

The second issue presented is that defense counsel failed to file a *Brady* motion which would have revealed a police report filed by Officer Linda Matthews. The police report contained information which was contrary to the testimony of Officer Matthews. She testified at trial that Bullock was fighting with Owens when she arrived. When she commanded them to stop fighting, Bullock approached her in an aggressive manner and Caywood fled the area. However, according to her report, Officer Matthews wrote that "all persons stopped fighting on command, but Patrick Haywood [sic] *walked* through HH . . . ." The report also mistakenly records that Bullock was fighting with Owens and that Caywood was fighting with Tunstall.

It was clear from the evidence presented at trial that Officer Matthews had confused which individuals were fighting each other and erroneously switched their names. Owens testified that he was fighting with Caywood. Tunstall also testified that Owens was fighting with Caywood and that he was fighting with Bullock. (Tr. at 72-74, 92, 110.) Although Officer Matthews confused the relationship of the parties involved, the jury also was presented with the testimony of both Owens and Tunstall. It is the jury's duty to determine which witnesses' version of the facts was more credible.

The fact that the report was not properly discovered did not result in prejudice to the Defendant. Although the report suggests that Bullock ceased fighting right away, as opposed to the testimony of Officer Matthews which stated that Bullock was aggressive, this information does not necessarily affect the verdict regarding the commission of the crimes. This is because the actions of Bullock narrated in the police report occurred *after* the incident for which Bullock was convicted. Additionally, there is significant testimony, aside from the testimony of Officer Matthews, which indicates that Bullock was aggressive preceding and during the commission of the offense. (Tr. at 70, 108.) The Court is of the opinion that the absence of the police report is not sufficiently prejudicial to have made the trial unfair.

In his Petition, Bullock's sixth point[1] alleges that defense counsel failed to call additional witnesses to testify regarding Bullock's truthfulness and that this failure resulted in prejudice to his case. Six witnesses of varying relationships testified that Bullock was truthful. The Court cannot conceive that the addition of one or any number of additional witnesses would have effected the result of this trial. The Court finds no prejudice in counsel's failure to provide additional character witnesses. *See, Titcomb v. Wyatt*, 1 Va. App. 31, 37 (1985) *citing, Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2069 (1984) (there is no reason for a court to decide the performance component of an ineffectiveness test if it is easier to dispose of an ineffective claim on other grounds of lack of sufficient prejudice).

The seventh issue in the Petition addresses defense counsel's failure to object to the testimony of two witnesses regarding Owens' reputation for peacefulness and tranquility. The two witnesses testified regarding Owens' reputation, and one of the two also mentioned Tunstall's reputation for

---

[1] Because of the similarity in the analysis of points three, four, and five of the Petition, the issues are not addressed in numerical order.

those qualities. The testimony of the first witness was objected to by defense counsel. The Court interjected by asking the witness if "it" is good or bad, meaning the reputation of Owens for peacefulness and tranquility. (Tr. at 303.) The witness was required to answer the Court's question. When the second witness was asked the same question, because the Court had already elicited the evidence from the previous witness, there was a question as to whether defense counsel should object. The Court finds no showing of ineffectiveness by defense counsel in this portion of the trial.

The main thrust of the habeas petition lies in the remaining issues of ineffective assistance of counsel. The third and fourth issues deal with the testimony of David Clodfelter, William Smith, Henry Caywood, and Cynthia Payne, all of whom would testify about Caywood's admission of stabbing both Owens and Tunstall. Cynthia Payne's testimony as to Caywood's admission, that he stabbed both Owens and Tunstall, is at best equivocal. Clodfelter testified at the habeas hearing that Caywood told him that he did not remember getting the other guy (meaning Tunstall) but thought he did. Henry Caywood, the father, said his son told him that he withdrew a knife from his boot, swung a number of times because he was getting his butt kicked, but was not sure if he hit anyone or how many he hit. William Smith stated that he would have testified that Caywood told him he stabbed one and then the other, meaning Owens and Tunstall. Ryder stated that Smith was leaving for the Air Force on the Friday before the trial and that they had Ms. Walters' testimony about Caywood's admission. Obviously, he had analyzed the cumulative effect of Walters and Smith's testimony and felt hers was sufficient. The final issue, addressed as point five in the Petition, deals with defense counsel's failure to introduce the testimony of two individuals, Spear and Lewis, both of whom would have testified that Tunstall was not sure who had stabbed him. These remaining issues address whether Bullock was the person who stabbed Tunstall.

Bullock alleges that if these witnesses (Spear, Lewis, Payne, Clodfelter, and Smith) had testified, the jury would have determined that it was Caywood and not Bullock that stabbed Tunstall and Owens. According to this Court at trial of the original charges and the Court of Appeals, even if the jury determined that Bullock did not stab anyone, the verdict could remain the same based on the "concert of action" of Bullock and Caywood. The theory of concert of action is explained in Jury Instruction Number 6, which reads:

If there is *concert of action* with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, *all who participate in any way in bringing it about are equally answerable* and bound by the acts of every other person connected with the consummation of such resulting crime [emphasis added].

Regardless of whether the jury was presented with evidence of exactly who stabbed Owens and who stabbed Tunstall, if the evidence was sufficient for the jury to decide that either Caywood or Bullock did the stabbings and that the two were involved in a "concert of action," Bullock could be convicted for the results of the crimes. Bullock has not shown how the identification of which person stabbed Tunstall would effect the verdict of the jury and its finding of concert of action between Caywood and him.

The Court of Appeals denied Bullock's Petition for Appeal. In its decision, the Court stated that the trial court properly instructed the jury on "concert of action." The decision cites language in *Carter v. Commonwealth* which holds that if people who act together with an intent to commit a crime, all of them will be held responsible for a resulting crime which is incidental and a probable consequence of that crime. *Carter v. Commonwealth*, 232 Va. 122, 126-27, 348 S.E.2d 265, 268 (1986).

The jury was instructed as to the concert of action of Caywood and Bullock. Bullock presented evidence during trial to show that Caywood broke off his confrontation with Owens, left the scene, and returned with a knife. Bullock also put on evidence that he was not aware a knife would be used in the fight nor that Caywood had, in fact, returned to the fight with a knife. He argued during trial that because Caywood acted on his own by getting the knife, the concert of action ceased to exist. This evidence was before the jury for its consideration and was uncontested at trial. Bullock has not evidenced that any error occurred in the presentation of his evidence regarding his theory of the termination of the concert of action, regardless of the independent action of Caywood. Therefore, the jury may have believed there was concert of action between the two. They dealt with conflicting evidence about who did the stabbing. Under the law of the case, it did not matter who did the stabbing if the jury found that each was responsible for the acts of the other.

The evidence which these added witnesses could provide goes only to who did the stabbing. Since the theory of "concert of action" applied, Bullock failed to show that any prejudice exists.

For the foregoing reasons, the petition of Samuel Bullock for Habeas Corpus is denied.