COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Petty
Argued at Richmond, Virginia


ISMAEL PAIZ
                                                              OPINION BY
v.        Record No. 2142-07-4                     JUDGE WILLIAM G. PETTY
                                                            AUGUST 25, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

Blake K. Woloson (Elizabeth Lauwaert; Law Office of O. Keith
Hallam, Jr., on briefs), for appellant.

Rosemary V. Bourne, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


On January 11, 2007, a jury convicted Ishmael Paiz of lynching in violation of Code

§ 18.2-40; use of a firearm while committing murder by mob in violation of Code § 18.2-53.1;

malicious wounding by mob in violation of Code § 18.2-41[1]; use of a firearm while committing

malicious wounding by mob in violation of Code § 18.2-53.1; and criminal street gang

participation in violation of Code § 18.2-46.2.  On appeal, Paiz contends that the trial court erred

in failing to grant his motion to vacate his convictions under Code § 18.2-53.1 because the

evidence proved that he did not actually use a firearm and the mere fact that he was a member of

---

[1] Paiz was originally charged with aggravated malicious wounding under Code
§§ 18.2-42.1 and 18.2-51.2.  The jury convicted him of the lesser-included offense of malicious
wounding by mob in violation of Code § 18.2-41.  The trial court sentenced Paiz to five years for
malicious wounding by mob, which is a Class 3 felony punishable by five to twenty years.
However, the sentencing order incorrectly listed Code § 18.2-51.2, which is a Class 2 felony
punishable by twenty years to life, as the code section under which Paiz was convicted.

a mob does not render him vicariously responsible for that crime.[2]  For the following reasons, we agree with Paiz and reverse his convictions.

## I. BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the prevailing party below, the Commonwealth, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), and we grant to that party all fair inferences flowing therefrom.  Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008).

Ishmael Paiz was a member of a gang named MS-13.  Julio Bonilla and Geovany Silva-Lopez, the victims in this case, were both members of a rival gang named SSL, which is an abbreviation for South Side Locos.  MS-13 and SSL have a history of violence ranging from leaving threatening notes to committing assault, battery, and homicide.

On April 27, 2006, Paiz went to a soccer game with Juan Pablo Salamanca Rodriguez, Hector Rodriguez, and Felipe Salamanca Rodriguez.  All were members of MS-13.  At the soccer game, members of SSL stared at Juan Pablo and Juan Pablo stared back.  This stare-down began a deadly altercation between MS-13 and SSL.

After the soccer game, Paiz drove Juan Pablo, Hector, and Felipe Rodriguez to a parking lot outside Arlington Mills Center Mall.  According to the testimony, everyone in the car knew

---

[2] Paiz's question presented states as follows:  "Did the trial court err in failing to vacate the two convictions for use of a firearm in the commission of both murder by mob and malicious wounding by mob, as a member of a mob, because such crimes do not exist?"  While this question presented does not precisely frame the issue as one of sufficiency, Paiz's argument clearly does.  While adherence to some rules of court are jurisdictional, "the requirements of Rule 5A:12(c) . . . have been expressly held to be not jurisdictional."  Jay v. Commonwealth, 275 Va. 510, 517-20, 659 S.E.2d 311, 315-17 (2008).  Here, the defense attorney and the assistant Commonwealth's attorney both argued the issue of sufficiency at the hearing on Paiz's motion to vacate and the trial judge ruled on it.  Further, the Attorney General did not object to the scope of the question presented and, in fact, argued the sufficiency issue on brief and at oral argument.  Therefore, we conclude that appellant's failure to adhere strictly to Rule 5A:12(c) "is insignificant, [and not] so substantial as to preclude the court's addressing the merits of the case."  Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 154 (2008).

that Juan Pablo had a gun and that he "might use it" that day. When they arrived at Arlington Mills Center Mall, Paiz looked to his right while he was at a red traffic light and he saw a SSL member lean out of a black car and "throw up a [SSL] hand sign." Paiz drove through the intersection and pulled over. The driver of the black car pulled out of the mall parking lot and passed Paiz.

In a statement to police, Paiz said that Juan Pablo intended to fight the driver of the black car, but acknowledged that if other members of SSL joined the fight, then the other members of MS-13 would also join. As Paiz was driving, he slowed down and Juan Pablo got out of the car, screamed "Mara Salvatrucha"—which is what MS represents in the gang's name—fired several shots, came back to the car, and told Paiz, "Let's go." Paiz left the scene and then he took Felipe home, took Hector home, dropped Juan Pablo off, and drove himself home. The shots fired by Juan Pablo killed Julio Bonilla and seriously injured Geovany Silva-Lopez.

Paiz was indicted for murder by lynching (Code § 18.2-40) and aggravated malicious wounding by mob (Code §§ 18.2-42.1 and 18.2-51.2). In addition, he was indicted for using a firearm in the commission of murder and using a firearm in the commission of aggravated malicious wounding. After the trial commenced, the Commonwealth amended both indictments to include an allegation that the crimes occurred while Paiz was a member of a mob. As to each offense, the trial court instructed the jury that the Commonwealth had to prove the following elements of the offense:

> (1) That a firearm was displayed in a threatening manner, used or there was an attempt to use it; and
>
> (2) That the display, use or attempted use of the firearm was while committing or attempting to commit [murder and malicious wounding by mob]; and

(3) That the use of the firearm was done by a member of the mob; and

(4) That the defendant was a member of the mob.

The trial court further instructed the jury that

> [o]nce the group assembled comprises a mob, every person composing the mob becomes criminally culpable even though the member may not have actively encouraged, aided, or countenanced the act. Criminal accountability flows from being a member of a mob, regardless of whether the member aids or abets in . . . act of violence.

The jury found Paiz guilty of both offenses. He subsequently moved the trial court to vacate the jury's verdicts on both use of firearm convictions and to dismiss those charges. The trial court denied Paiz's motion. Paiz appealed.

## II. ANALYSIS

Paiz does not challenge in this appeal his conviction for the underlying offenses of lynching or malicious wounding by mob. Nor does he challenge whether he was a member of a mob as defined by Code § 18.2-38. Rather, he challenges his convictions for using a firearm during the commission of murder and using a firearm during the commission of malicious wounding by mob, both in violation of Code § 18.2-53.1. Paiz argues, and the record supports, that he did not actually use the firearm in the commission of either predicate offense. He reasons that, under the mob theory of collective responsibility, he can only be convicted of an offense committed by some other member of the mob if that offense is an act of violence as defined in Code § 19.2-297.1. Because Code § 18.2-53.1 is not included in Code § 19.2-297.1, Paiz concludes that he has no criminal responsibility for the firearm offenses committed by another member of the mob simply because he too was a member of that mob. Thus, the question before us is whether Article 2, Chapter 4, Title 18.2 of the Code of Virginia supplies a legal basis for his convictions of use of a firearm during the commission of murder and malicious wounding by

- 4 -

mob when he did not personally use or attempt to use a firearm, or display it in a threatening manner.

We consider the issue on appeal one of statutory interpretation, which "presents a pure question of law subject to de novo review." Torloni v. Commonwealth, 274 Va. 261, 267, 645 S.E.2d 487, 490 (2007) (citing Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006)). When statutory language is clear and unambiguous, "[c]ourts are bound by the plain meaning of statutory language." Hicks v. Mellis, 275 Va. 213, 218, 657 S.E.2d 142, 144 (2008). In interpreting the plain meaning of the statute, we strive to "'adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'" Tyszcenko v. Donatelli, 53 Va. App. 209, 216, 670 S.E.2d 49, 53 (2008) (quoting Colbert v. Commonwealth, 47 Va. App. 390, 394, 624 S.E.2d 108, 110 (2006)). All statutes on the same subject matter, i.e., those standing *in pari materia*, must be considered together and harmonized if possible. Lambert v. Barrett, 115 Va. 136, 78 S.E. 586 (1913). Further, because Code § 18.2-42.1 is penal in nature, we must strictly construe the statute in a manner that favors Paiz. Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979). This maxim of appellate review, however, does not "entitle[] [Paiz] to a favorable result based upon an unreasonably restrictive interpretation of the statute." Id. (citing Wesley v. Commonwealth, 190 Va. 268, 275-76, 56 S.E.2d 362, 365 (1949)).

Code § 18.2-53.1 criminalizes the use, attempted use, and display of a firearm in the commission of a laundry list of felonies including:

> *murder*, rape, forcible sodomy, inanimate or animate object sexual
> penetration as defined in § 18.2-67.2, robbery, carjacking,
> burglary, malicious wounding as defined in § 18.2-51, malicious
> bodily injury to a law-enforcement officer as defined in
> § 18.2-51.1, aggravated malicious wounding as defined in

- 5 -

§ 18.2-51.2, *malicious wounding by mob* as defined in § 18.2-41 or abduction.

Code § 18.2-53.1 (emphasis added).

The crime of "murder by mob" is not specifically mentioned in that list of felonies because, technically, the proper term describing that crime is "lynching." Code §§ 18.2-39 and 18.2-40. "Murder by mob" is a shorthand description of both Code § 18.2-39, which defines lynching, and Code § 18.2-40, which deems every lynching a murder. However, because lynching is a form of murder, and murder is a listed offense in Code § 18.2-53.1, it is included as one of the predicate felonies mentioned in Code § 18.2-53.1. See Willis v. Commonwealth, 10 Va. App. 430, 393 S.E.2d 405 (1990). "[M]alicious wounding by mob as defined in Code § 18.2-41" is specifically listed as a predicate offense. Code § 18.2-53.1. Therefore, it is clear that the offenses for which Paiz was convicted—lynching and malicious wounding by mob—are predicate offenses under Code § 18.2-53.1.

Proof that Paiz committed one of the named predicate offenses, however, is not sufficient to support a conviction under Code § 18.2-53.1. It is also necessary to prove that "*he* used or attempted to use the firearm or displayed the firearm in a threatening manner, while committing or attempting to commit . . . one of the . . . specified felonies." Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994) (emphasis added). It is a well established principle of law that "[a] principal in the first degree is the actual perpetrator of the crime." Jones v. Commonwealth, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967). Here, Juan Pablo, the one who actually possessed and used the firearm, was the principal in the first degree to the use of a firearm in the commission of a felony.

However, one need not actually possess a firearm in order to be convicted under Code § 18.2-53.1. If the accused did not actually hold or possess the firearm, he may "nevertheless be convicted as a principal in the second degree of the use of a firearm in the commission of a

felony where he acted in concert with the gunman." Carter v. Commonwealth, 232 Va. 122, 125, 348 S.E.2d 265, 267 (1986); Cortner v. Commonwealth, 222 Va. 557, 281 S.E.2d 908 (1981). Thus, as with almost every other felony, an accused could be convicted of violating Code § 18.2-53.1 under the principal-in-the-first-degree, principal-in-the-second-degree, accessory-before-the-fact, or concert-of-action theories. See Code § 18.2-18; Carter, 232 Va. at 125, 348 S.E.2d at 267.

In this case, the Commonwealth did not present any of these theories of vicarious responsibility to the jury. Rather, it elected to present this case to the jury on the theory that Paiz was a member of a mob and that another member of the mob used the firearm in the commission of a listed felony. Therefore, we must limit our review to whether this legal theory permits collective responsibility for this particular crime and we will not consider whether the evidence supports his conviction under some other vicarious responsibility theory. See Carter, 232 Va. at 125, 348 S.E.2d at 267.

Virginia's statutes extending criminal responsibility for offenses committed by a member of a mob to other members of that mob are set out in Article 2, Chapter 4, Title 18.2 of the Code of Virginia. Code § 18.2-38 defines a mob as "[a]ny collection of people, assembled for the purpose and with the intention of committing . . . an act of violence as defined in § 19.2-297.1, without authority of law . . . .'" Article 2 establishes two specific mob related felonies: (1) lynching, Code §§ 18.2-39 and 18.2-40, and (2) malicious or unlawful wounding by mob, Code § 18.2-41. A mob is guilty of lynching if the mob directs an act of violence toward some person, and that person dies as a result of that act of violence. Code § 18.2-39. "Every lynching shall be deemed murder," and "[a]ny and every person composing a mob and any and every accessory thereto, by which any person is lynched, shall be guilty of murder, and upon conviction shall be punished as provided in Article 1 (§ 18.2-30 et seq.) of this chapter." Code

§ 18.2-40. Code § 18.2-41 states that "[a]ny and every person composing a mob which shall maliciously or unlawfully . . . wound any person, or by any means cause him bodily injury with intent to maim, disable, disfigure or kill him, shall be guilty of a Class 3 felony." The use of the word "which" in these statutes indicates that the mob is the criminal actor. In other words, the statute imposes "individual liability based on collective act and intent." Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 523 (2008-2009).

However, this criminal responsibility does not extend to all crimes. Originally, Article 2 made members of a mob collectively responsible for only three crimes: simple assault and battery, Code § 18.2-42; malicious wounding by mob, Code § 18.2-41; and lynching, Code §§ 18.2-39 and 18.2-40. See Harrell v. Commonwealth, 11 Va. App. 1, 396 S.E.2d 680 (1990) (stating that "criminal accountability flows from being a member of a mob" under Code § 18.2-42 for the crime of simple assault and battery). In 1999, the General Assembly expanded Article 2 by enacting Code § 18.2-42.1, which established additional, but still limited, collective criminal responsibility to members of a mob. That statute provides that "[a]ny and every person composing a mob *which* commits an act of violence as defined in § 19.2-297.1 *shall be guilty of that act of violence* and, upon conviction, shall be punished as provided in the section of this title which makes that act of violence unlawful." (Emphasis added). An act of violence includes: first and second degree murder and voluntary manslaughter, mob-related felonies under Article 2, any kidnapping or abduction felony, any malicious felonious assault or malicious bodily wounding, robbery and carjacking, certain felony criminal sexual assault offenses, or certain arson offenses. Code § 19.2-297.1. Thus, this collective responsibility theory is limited to these enumerated acts of violence.

Therefore, it is only when one member of a mob commits one of the crimes enumerated in Code §§ 18.2-39 to 18.2-42.1 that all members of the mob can be held collectively responsible

- 8 -

solely because of their mob membership. Code § 18.2-53.1, use of a firearm in the commission of murder or malicious wounding, is not a crime of violence enumerated in Code § 19.2-297.1, as incorporated in Code § 18.2-42.1. Therefore, the plain language of Code § 18.2-42.1 requires us to hold that Paiz, who did not use or possess the firearm, cannot be held criminally responsible for that offense simply because he was a member of the mob that committed the offense.

Nonetheless, the Commonwealth notes that Code § 18.2-53.1 includes both malicious wounding and malicious wounding by mob in the list of predicate offenses. It argues that the actual gunman would always be subject to prosecution for use of a firearm in the commission of malicious wounding. Therefore, the Commonwealth reasons, the General Assembly must have intended to hold every person in the mob responsible for the use of a firearm in the commission of malicious wounding by mob. To conclude otherwise, it argues, would render the reference to malicious wounding by mob meaningless.

However, we note that malicious wounding by mob, as set out in Code § 18.2-41, is a different offense from malicious wounding as codified in Code § 18.2-51. Malicious wounding by mob does not require the Commonwealth to prove malice because it defines the crime as "maliciously or unlawfully [wounding] any person . . . with intent to maim, disable, disfigure or kill him . . . ." Code § 18.2-41. The disjunctive term "or," which separates the terms "maliciously" and "unlawfully," indicates that Code § 18.2-41 only requires proof that the wounding was unlawful. Code § 18.2-41 therefore criminalizes different conduct from malicious wounding under Code § 18.2-51. Thus, the General Assembly had to make specific reference to § 18.2-41 in order to include it as a predicate offense in the use of a firearm statute.

### III. CONCLUSION

Even though Paiz was a member of a mob, we hold that Code § 18.2-42.1 does not render him criminally responsible for using a firearm in the commission of lynching and using a firearm in the commission of malicious wounding by mob simply because of that membership.  Because of this we conclude that the trial court erred in denying Paiz's motion to vacate the jury verdicts and dismiss the charges.  Therefore, we reverse and dismiss Paiz's convictions under Code § 18.2-53.1.

<u>Reversed and dismissed.</u>