COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, McCullough and Senior Judge Clements
Argued at Chesapeake, Virginia

UNPUBLISHED

DEON CHRISTOPHER COBB

MEMORANDUM OPINION[*] BY
v.      Record No. 1526-12-1      JUDGE JEAN HARRISON CLEMENTS
OCTOBER 22, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Afshin Farashahi (Afshin Farashahi, P.C., on briefs), for appellant.

Susan Baumgartner, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


In a jury trial, Deon Christopher Cobb (appellant) was found guilty of murder, attempted

robbery, conspiracy to commit robbery, and two counts of using a firearm in the commission of a

felony.  On appeal, appellant argues the trial court erred in admitting into evidence records of text

messages sent to and received by a particular cellular telephone number.  He contends the records

were inadmissible hearsay and violated the best evidence rule.  Appellant also contends the

evidence was insufficient to support his convictions.  We find no error and affirm the trial court's

decision and appellant's convictions.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

FACTS

"'When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense.'" Slade v. Commonwealth, 43 Va. App. 61, 69, 596 S.E.2d 90, 94 (2004) (quoting Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999)).

At about 9:30 p.m. on September 14, 2010, Richard Emerle was in a room at the Budget Lodge Motel in Chesapeake with Conell Darden and another individual. After receiving a telephone call, Darden advised that he was expecting someone named "Cobb" to arrive at the door of the motel room. Emerle was seated beside the door. Emerle answered a knock at the door and admitted appellant, whom Emerle did not know. Appellant and Darden had a brief conversation. As appellant prepared to leave, Emerle got up to open the door for him. Appellant said, "That's okay. I got it." When appellant turned the door handle, thus unlocking the door, the door was pushed open from the outside. Two gunmen appeared.

One of the gunmen entered the room and demanded money. Initially, Darden said he did not have any money. When the gunman persisted in his demand, Darden pointed at a dresser drawer and said it was inside. As the gunman turned toward the dresser Darden tried to tackle him. The gun fired, striking Darden in the chest. The gunman and the other armed individual fled from the scene.

The police arrived at the motel room at 9:37 p.m. in response to 911 calls placed by Emerle and appellant. Darden was transported to the hospital for emergency medical treatment, but he died from the gunshot wound he had suffered to his chest.

When the police arrived, appellant was still in the vicinity of the motel room where Darden was shot. During his investigation at the scene, Detective James Thomas examined the cellular

telephone that belonged to appellant. At 10:58 p.m. on September 14, 2010, appellant's phone received a text message stating, "[W]ipe that draw off 4 me." Presumably, the "draw" referred to in the message was the dresser drawer where Darden indicated the cash was stored. The message was sent from a device assigned the number 419-0926. As Exhibit 23, the Commonwealth introduced a photograph of appellant's telephone displaying that message.

Video taken by a surveillance camera at the motel showed appellant interacting with two men outside the room where the shooting occurred. When appellant reached the door of the room, he raised his arm. Then, he knocked on the door and was admitted inside.

When initially questioned by the police, appellant said that Tony Tucker had dropped him off at the motel alone and that he was surprised when the gunmen appeared at the door of the motel room.[1] However, after being confronted by the surveillance video and the presence of the text message about the "draw" on his phone, appellant admitted that Anthony Saunders was the shooter. Appellant claimed that he had not been in contact with Saunders recently.

The device assigned the number 419-0926 was a cellular telephone registered to Saunders' thirteen-year-old son. Saunders often used that phone to communicate by text message with his girlfriend, Shannon Walker, and others.

Records of Verizon Wireless telephone company, the service provider for 419-0926, demonstrated that on September 13, 2010, there were eight calls between appellant's phone and 419-0926. There were thirteen calls between the two phone numbers on September 14, 2010, and one call on September 15, 2010.

The Commonwealth also introduced, as Exhibit 21, text messaging detail records of Verizon Wireless relating to 419-0926. Monica Harper, the records custodian for Verizon Wireless, testified regarding text messages sent from 419-0926 on September 14 through September 15, 2010.

---

[1] Tucker testified that he did not give Cobb a ride to the motel that night.

Messages conveyed that the user of 419-0926 was planning to obtain some money and was trying to recruit someone to do a "sting" with him. There were messages from the evening before the shooting that the user of 419-0926 was at "deon's" home. After the shooting of Darden occurred, the user of 419-0926 sent text messages to Walker expressing desperation and affection, and also that he was about to throw away his phone and go into hiding. On the day after the shooting, the user of 419-0926 sent text messages to Walker stating that no one could identify him and that "nobody knew me but Deon." He further instructed someone to call "Deon's phone" to see who answered. The user of 419-0926 later indicated in a text message that the police had "Deon's" phone and that "Deon" might have talked to the police.

Saunders was not arrested until about six months after Darden's killing. Detective Thomas testified at a pretrial motions hearing that the police did not recover Saunders' telephone. In a separate trial, Saunders was convicted of the murder of Darden, attempted robbery, conspiracy, and two counts of using a firearm in the commission of a felony.

## PROCEDURAL HISTORY

Appellant filed a pretrial motion *in limine* to exclude evidence of cell phone text messages received by or recorded on his telephone, as well as any documentary evidence relating to such text messages. In his motion, appellant contended the evidence was inadmissible hearsay and was barred by the best evidence rule. At a hearing upon his motion, conducted on August 16, 2011, Detective Thomas testified regarding the contents of two text messages he retrieved from appellant's phone and photographed, one of which was the message regarding the "draw." Initially, appellant argued that "the two text messages that Detective Thomas testified about are the specific items of evidence that we're asking the Court to exclude." He argued the messages were hearsay and did not fall within the exception to the hearsay rule regarding statements made by co-conspirators. The Commonwealth countered that the text messages were admissible under either

- 4 -

the co-conspirator or declaration against penal interest exception to the hearsay rule. The prosecutor then said she was unsure of whether, at trial, she would try to introduce appellant's telephone displaying the messages or the photographs of the messages displayed on the telephone. Defense counsel then refocused her argument, stating, "I don't have any problem with the pictures being used in lieu of the cell phone. It was only the other records independently obtained from the phone company that we would have objected to." The trial court asked, "So you're not objecting to the photographs?" Defense counsel said she was not. At a subsequent hearing, the trial court overruled the motion *in limine*, citing the declaration against penal interest exception to the hearsay rule.

At trial, the Commonwealth sought to introduce Exhibit 21, the Verizon Wireless records of text messages made and received by 419-0926 on September 14 and 15, 2010. Harper testified that Exhibit 21 was an accurate copy of the company's records reflecting those messages. Appellant objected to Exhibit 21, stating that the issue addressed at the pretrial hearing was the admissibility of the "two specific text messages," and "not the remainder of the text messages that the Commonwealth is intending here to offer again today." Appellant argued the Commonwealth had not laid an adequate foundation through Harper for admission of the documents as business records. He further contended the records were not admissible under either the co-conspirator statement or declaration against penal interest exception to the hearsay rule and that the best evidence rule barred admission of the records. The trial court agreed that the Commonwealth had not established an adequate foundation through Harper, but that that could be remedied since Harper was still available as a witness. The trial court recessed for the day and had the parties brief the issues raised regarding the admissibility of Exhibit 21.

The following day, after allowing the parties further opportunity for argument, the trial court stated that it would permit the Commonwealth to lay a foundation for introduction of the records through Harper. The Commonwealth requested a ruling regarding whether a prima facie case of

- 5 -

conspiracy had been established at that juncture. The trial court ruled the evidence already introduced established a prima facie case of conspiracy. The trial court then stated,

> With regard to the best evidence ruling, I wonder, . . . back when that rule was established, you know, we had carbon paper or before that, and we've had the invention of computers, and a text message seems to me originates from a radio wave, an electronic wave. How do you get the original of that, when you get the writing, doesn't that come from -- isn't that just memorializing what the wave is? Interesting questions. I'm sure at some point in the future we'll get some better case law on this. Technology now is moving extremely quickly. I guess the law needs to catch up with it. I do think the Commonwealth needs to have some further questions of the custodian, so I will allow that.

The Commonwealth recalled Harper to the witness stand. In response to questioning by the prosecutor, Harper testified that the records contained in Exhibit 21 were kept in the normal course of business, were relied upon by Verizon Wireless in the transaction of business, and were created instantaneously with the text messages themselves. Exhibit 21 then was introduced without any objection other than those appellant previously had raised.

Subsequently, when the Commonwealth sought to introduce Exhibit 23, appellant stated he had "no objection other than the objections previously made at the pretrial motions in August."

ANALYSIS

I.  Admission of Verizon Wireless Text Message Records

Appellant contends the trial court committed reversible error by admitting Exhibit 21 into evidence because the records were inadmissible hearsay and barred by the best evidence rule. [2]

---

[2] Appellant's argument on best evidence grounds does not encompass an objection to Exhibit 23, the photograph of the text message as found by the police on appellant's phone, "[W]ipe that draw off 4 me." Appellant states in his brief that a proper way to establish the content of text messages is "through photographs of those messages on that phone," precisely what Exhibit 23 is. Moreover, appellant conceded at oral argument in this Court that he had no valid objection to Exhibit 23 based upon the best evidence rule.

Although appellant argues on appeal that the text message in Exhibit 23 was inadmissible hearsay, appellant did not raise this objection when the evidence was introduced at trial. Instead, appellant relied upon the argument raised at the August 2011 pretrial hearing. Although he made

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988).

## A. Best Evidence Rule

Appellant argues the trial court erred in rejecting his contention that the best evidence rule barred admission of Exhibit 21.[3]

Appellant's trial occurred prior to the adoption of the Virginia Rules of Evidence, which became effective on July 1, 2012. Therefore, the admissibility of evidence in this case was governed by the common law rules of evidence. See Brown v. Commonwealth, 54 Va. App. 107, 113, 676 S.E.2d 326, 329 (2009).

> In Virginia, the best evidence rule provides that "where the contents of a writing are desired to be proved, the writing [the primary evidence] itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted." Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926); Butts v. Commonwealth, 145 Va. 800, 816, 133 S.E. 764, 769 (1926). Thus, if the purpose is to prove the truth

---

statements to the contrary at trial during argument regarding the admissibility of Exhibit 21, at the pretrial hearing appellant said he was challenging the admissibility only of "records independently obtained from the phone company," not the admissibility of photographs Thomas took of text messages on appellant's telephone. Thus the record does not reflect that appellant preserved a hearsay objection to Exhibit 23 because he did not, at the time the evidence was offered, raise or renew a hearsay objection to that same evidence. See Rule 5A:18; Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986) ("To be timely, an objection must be made when the occasion arises -- at the time the evidence is offered or the statement made."). Accordingly, we do not consider such a contention on appeal.

We need not consider independently the admissibility of Exhibit 7, which consisted of two pages of records of text messages pertaining to 419-0926. Exhibit 7 was merely an excerpt of, and was contained completely within, Exhibit 21.

[3] We note that the trial court made no specific rulings regarding application of the various aspects of the best evidence rule. Nonetheless, the trial court's decision to admit Exhibit 21 over appellant's objection on the basis of the best evidence rule permits us to consider the issue on appeal. But see Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998) (it is incumbent upon appellant to obtain a ruling from the trial court or "there is no ruling for us to review on appeal").

of the contents of a writing, the primary evidence must be produced, if available.

Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993). The best evidence rule applies only to writings. See Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 577 (2010) (finding best evidence rule did not bar introduction of photographs and video recordings copied from the hard drive of defendant's computer); Brown, 54 Va. App. at 120, 676 S.E.2d at 332 (best evidence rule did not bar testimony regarding the contents of a surveillance camera videotape).

Appellant claims that the display of text messages on the actual cellular device assigned the number 419-0926 was the writing which the Commonwealth sought to prove at trial and that in the unexplained absence of the device or photographs of the text messages displayed, secondary evidence was inadmissible to prove the content of text messages sent or received by the device. A writing has been defined by the General Assembly as "any representation of words, letters, symbols, numbers, or figures, whether (i) printed or inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in a perceivable form and whether an electronic signature . . . is or is not affixed." Code § 1-257.

No Virginia appellate court has yet determined whether a text message is a "writing" for purposes of the best evidence rule. However, other courts, applying their own rules of evidence, have found that "a text message is a writing because it consists of letters, words, or numbers set down by mechanical or electronic recording, or other form of data compilation." State v. Espiritu, 176 P.3d 885, 892 (Haw. 2008). See also Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 577 (D. Md. 2007). We assume without deciding that a text message qualifies as a "writing."

Nonetheless, under the best evidence rule, where the admitted evidence qualifies as an original of the writing in question "application of the best evidence rule is unnecessary." Winston v. Commonwealth, 16 Va. App. 901, 904, 434 S.E.2d 4, 5 (1993). Courts have applied the concept of

"duplicate originals" to mechanically reproduced copies.  See, e.g., Burton v. F. A. Seifert & Co., 108 Va. 338, 352-53, 61 S.E. 933, 939 (1908) (applying the duplicate original principle to "letter-press copies"); Chesapeake & O. R. Co. v. F. W. Stock & Sons, 104 Va. 97, 101, 51 S.E. 161, 162 (1905) (recognizing that a "carbon copy" may be regarded as a "duplicate original").  Under this view, "[m]any of the documents that we commonly refer to as 'copies' are in fact 'duplicate originals,' and are *treated* as 'originals' for purposes of the best evidence rule."  Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia 18-4[a], at 1195 (7th ed. 2012).

Neither this Court nor the Supreme Court of Virginia has decided whether the printed record of an exchange of text messages is an original or duplicate original of the messages.  Nonetheless, we have observed that "[t]he potentially limitless application of computer technology to evidentiary questions will continually require legal adaptation."  Penny v. Commonwealth, 6 Va. App. 494, 499, 370 S.E.2d 314, 317 (1988).

In Adams v. State, 117 P.3d 1210, 1219 (Wyo. 2005) (quoting Wyoming Rules of Evidence 1001(3)), the Wyoming Supreme Court ruled admissible as an original or duplicate original a computer printout of instant messages between the defendant and a police officer, noting that state's rules of evidence defined an original as "including any computer printout or other readable output of data stored in a computer or similar device, which is 'shown to reflect the data accurately.'"  Similarly, in Laughner v. State, 769 N.E.2d 1147, 1159 (Ind. Ct. App. 2002), the Indiana Court of Appeals applied that state's rules of evidence and found that a printout of messages sent between two computers was an original for purposes of the best evidence rule.  See also Lorraine, 241 F.R.D. at 577-78 (applying the Federal Rules of Evidence).

We conclude that, under the law applicable at the time of appellant's trial, the Verizon Wireless records of the text messages were originals or duplicate originals for purposes of the best evidence rule.  Harper testified that the text messages were recorded instantaneously by the

company at the time they were created. Thus, the printout of the company's records of the text messages was an original writing, just as mechanically reproduced or photocopied documents are considered originals. Therefore, the trial court did not err in finding that the best evidence rule did not bar the introduction of Exhibit 21.

## B. Hearsay

Appellant also contends the Verizon Wireless records of the text messages were inadmissible hearsay. Hearsay is "'testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter.'" Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (quoting McCormick on Evidence § 246, at 584 (2d ed. 1972)). In order for hearsay to be admissible, it must "come within one of the many established exceptions to the general prohibition against admitting hearsay." Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992). "'[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" Braxton v. Commonwealth, 26 Va. App. 176, 183-84, 493 S.E.2d 688, 691 (1997) (quoting Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).

Initially, we note that not all the text messages contained in Exhibit 21 were admitted for the truth of the matters asserted therein. Many of the messages in the records were those sent to or from 419-0926 with innocuous communication that had nothing to do with the conspiracy or commission of the crimes. The messages unrelated to these matters were not offered to prove the truth of their assertions, and did not constitute hearsay.

Appellant argues on appeal that the text message records were not admissible under the hearsay exception relating to statements by co-conspirators. The Commonwealth responds that

the records qualified for admission under hearsay exceptions pertaining to statements by co-conspirators, declarations against penal interests, or present sense impressions.

The record does not reflect that the trial court ruled Exhibit 21 admissible based upon any of the exceptions advanced by the parties on appeal. Rather, the trial court agreed with appellant's initial argument that the Commonwealth had not laid sufficient foundation for the records' admission under the business record exception to the hearsay rule, but permitted the Commonwealth to question Harper further to establish a proper foundation. Although the trial court had the parties brief the applicability of the hearsay exceptions asserted, the court did not rely on any of them in ruling Exhibit 21 admissible.

"Under the modern Shopbook Rule, . . . a recognized exception to the hearsay rule, verified regular entries may be admitted in evidence without requiring proof from the original observers or record keepers." Ford Motor Co. v. Phelps, 239 Va. 272, 275, 389 S.E.2d 454, 457 (1990). "'Admission of such evidence is conditioned . . . on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record.'" Sparks v. Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 70-71 (1997) (quoting "Automatic" Sprinkler Corp. v. Coley & Peterson, Inc., 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979)). "'[I]n Virginia today, personal knowledge of the entrant, or of the entrant's informant, is no longer an absolute prerequisite to the admissibility of business records, provided that the "circumstantial guarantees of trustworthiness" – regularity of preparation and reliance upon the records by those for whom they are prepared – are present.'" Cooper v. Commonwealth, 54 Va. App. 558, 568, 680 S.E.2d 361, 366 (2009) (quoting Charles E. Friend, The Law of Evidence in Virginia § 18-15, at 775 (6th ed. 2003)).

In McDowell v. Commonwealth, 273 Va. 431, 641 S.E.2d 507 (2007), the trial court admitted at the defendant's grand larceny trial a report prepared by an undercover detective employed by the store following a shoplifting incident. The report was based upon a merchandise inventory which indicated what items were missing, as well as the price of the stolen items. The Supreme Court ruled there "was a 'regularity of . . . preparation' of [the report] upon which [the store] relied 'in the transaction of business,' thus guaranteeing 'the trustworthiness or reliability' of the [r]eport[.]" Id. at 436, 641 S.E.2d at 509 (quoting "Automatic" Sprinkler Corp., 219 Va. at 793, 250 S.E.2d at 773). Thus, the report qualified for admission under the business record exception to the hearsay rule. See id. at 436, 641 S.E.2d at 510.

In this case, Harper, the custodian of records for Verizon Wireless, testified that the records contained in Exhibit 21 were accurate, that they were made in the regular course of business, that they were relied upon by Verizon Wireless in the transaction of business, and that they were made contemporaneously with the creation of the text messages themselves. Harper's testimony thus established the reliability of the Verizon Wireless records, and the trial court did not err in admitting Exhibit 21 under the business records exception to the hearsay rule.

## II. Sufficiency of the Evidence

Appellant contends the evidence was insufficient to prove that he participated in the attempted robbery as a principal in the second degree or that he conspired with Saunders to commit robbery. A principal in the second degree

> may be indicted, tried, convicted and punished as if a principal in the first degree. See Code § 18.2-18. To convict based on this theory, the Commonwealth must prove the defendant was present at the scene and "'share[d] the criminal intent of the party who actually committed the [crime] or [was] guilty of some overt act in furtherance thereof.'" Rollston v. Commonwealth, 11 Va. App. 535, 540, 399 S.E.2d 823, 826 (1991) (quoting Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 888-89

- 12 -

(1983)). A defendant may be convicted as a principal in the second degree if he or she is present, "'keeping watch or guard at some convenient distance.'" Id. at 539, 399 S.E.2d at 825 (quoting Brown v. Commonwealth, 130 Va. 733, 736, 107 S.E. 809, 810 (1921)). "'[P]roof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, . . . the [fact finder] may infer that he assented thereto . . . .'" Pugliese v. Commonwealth, 16 Va. App. 82, 93-94, 428 S.E.2d 16, 25 (1993) (quoting Foster v. Commonwealth, 179 Va. 96, 99-100, 18 S.E.2d 314, 316 (1942)).

Allard v. Commonwealth, 24 Va. App. 57, 62-63, 480 S.E.2d 139, 141-42 (1997). Moreover, "one who never held or possessed a firearm m[ay] nevertheless be convicted as a principal in the second degree of the use of a firearm in the commission of a felony where he acted in concert with the gunman." Carter v. Commonwealth, 232 Va. 122, 125, 348 S.E.2d 265, 267 (1986).

A conspiracy is "'an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). However, proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy. See Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992). Indeed, "'[t]he existence of an unlawful and inherently covert agreement can be inferred from the overt conduct of the parties.'" Floyd v. Commonwealth, 219 Va. 575, 581, 249 S.E.2d 171, 174 (1978) (quoting United States v. Harris, 433 F.2d 333, 335 (4th Cir. 1970)).

The evidence proved that appellant was present and assisting when Saunders tried to rob Darden and that appellant and Saunders were acting pursuant to a preconceived plan to commit the crime. The Commonwealth's evidence showed that appellant communicated by cell phone with Saunders, who was using the phone with number 419-0926, numerous times on the day the shooting occurred. Saunders indicated he was going to obtain some money and that he was trying to get someone to help him. He also indicated that he was with appellant that day.

- 13 -

Surveillance video showed appellant interacting with two individuals outside the motel before he gained admission to the room. When appellant opened the door as if to leave the room, the door was pushed open and two armed men appeared. Appellant thereby assisted Saunders, whom appellant identified as the shooter, in gaining entrance to the motel room. Saunders shot Darden when Darden tried to tackle him. Later, Saunders told appellant by text message to "wipe the draw" and thus remove potentially incriminating evidence that Saunders could have left behind in the motel room. Saunders told Walker that no one in the motel room but appellant could identify him, and speculated that appellant had cooperated with the police.

Considering all the facts and circumstances, the evidence proved beyond a reasonable doubt that appellant entered into an agreement with Saunders to commit robbery, appellant was present and assisting at the time of the attempted robbery, and Saunders shot Darden during the robbery attempt. Thus, the evidence was sufficient to prove appellant guilty of the offenses.

CONCLUSION

For the foregoing reasons, we find the trial court did not err and affirm appellant's convictions.

Affirmed.