**Richmond**

KEITH ALLEN JONES

v.

COMMONWEALTH OF VIRGINIA

No. 0083-91-2

Decided December 1, 1992

COUNSEL

Kimberly B. O'Donnell (David J. Johnson, on brief), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Keith Jones was convicted in the Circuit Court of the City of Richmond of felony murder and use of a firearm in the commission of murder. He also pled guilty to robbery and use of a firearm in the commission of robbery. Jones contends that the evidence is insufficient to sustain the felony murder conviction. We find the evidence to be sufficient and affirm the conviction.

■ Where sufficiency of evidence is challenged on appeal, the court must view the evidence in the light most favorable to the Commonwealth and accord to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). A trial court's judgment will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Code § 8.01-680; *Stockton v. Commonwealth*, 227 Va. 124, 145-46, 314 S.E.2d 371, 385, *cert. denied*, 467 U.S. 873 (1984); *Evans v. Commonwealth*, 215 Va. 609, 612-13, 212 S.E.2d 268, 271 (1975).

On June 25, 1990, Jones walked to an apartment at 2323 Seldon Street in the City of Richmond. When he arrived at the apartment, five other young men were there. "Pee Wee" and "Chuck" were sitting on a porch, and "Bey" was talking to two other men, Calvin Hendricks and Jerome Lawson, on the other side of the street. Hendricks and Lawson planned to purchase drugs from Bey; Bey, however, never intended to sell drugs to the two men, but planned, instead, to rob them.

Jones approached the porch where Pee Wee and Chuck were sitting. Bey and the two men crossed the street and walked toward the porch. Bey walked up to the porch and asked for Pee Wee's gun, which Pee Wee earlier had brought from inside the house. Pee Wee told Bey, "It's over there," and Jones and Bey retrieved it from behind the bushes where Pee Wee had hidden it.

Jones and Bey then robbed the two men at gunpoint. Bey told Jones to hold the gun on the men while Bey searched them for money. Meanwhile, Pee Wee remained on the porch approximately six feet from where the robbery was taking place. Pee Wee laughed at Bey as he searched the men because Bey was intoxicated. As Bey searched Lawson, Hendricks dropped five dollars onto the ground. Jones, who was still holding the gun on both men, leaned over to pick up the money and placed it in his pocket. During that moment, Lawson managed to escape. When Lawson ran, Pee Wee jumped from the porch, told Jones to give him his gun, and pointed it at Hendricks. Pee Wee asked Hendricks, "Why'd your friend run?" Hendricks replied that he did not know and insisted that he did not have any more money. Pee Wee then shot Calvin Hendricks in the face eight times at close range. As Pee Wee began shooting, Jones ran away.

Jones argues that the evidence was insufficient to support his conviction for felony murder because Pee Wee was not a participant in the underlying felony of robbery and because Pee Wee's actions in shooting Hendricks were not part of the criminal enterprise to commit robbery.

Both Jones and the Commonwealth concede that in order to hold Jones responsible for Pee Wee's killing of Hendricks, the Commonwealth must prove that Pee Wee was Jones' co-felon in the underlying robbery. In other words, Pee Wee must have been at least a principal in the second degree to the robbery. *Wooden v. Commonwealth*, 222 Va. 758, 765, 284 S.E.2d 811, 816 (1981) (criminal participant in a felony may not be convicted of the felony-murder of a co-felon killed by the victim of the initial felony); *Haskell v. Commonwealth*, 218 Va. 1033, 1044, 243 S.E.2d 477, 483 (1978); *King v. Commonwealth*, 6 Va. App. 351, 357, 368 S.E.2d 704, 707 (1988) (only acts causing death which are committed by those involved in the felony can be the basis for a conviction). The facts are sufficient to support the trial court's finding that Pee Wee was a principal in the second degree to the robbery.

In order for a person to be a principal in the second degree to a felony, the individual must "know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime." *McGhee v. Commonwealth*, 221 Va. 422, 427, 270 S.E.2d 729, 732 (1980) (applying the standard to accessory before the fact in murder conviction). The person must be "present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." *Brown v. Commonwealth*, 130 Va. 733, 736, 107 S.E. 809, 810 (1921). "[M]ere presence and consent will not suffice." *Underwood v. Commonwealth*, 218 Va. 1045, 1048, 243 S.E.2d 231, 233 (1978). The person "must share the criminal intent of the party who actually committed the [crime] or be guilty of some overt act in furtherance thereof." *Augustine v. Commonwealth*, 226 Va. 120, 124, 306 S.E.2d 886, 889 (1983).

A person assisting his confederate to commit a crime is accountable for all crimes committed by the confederate in furtherance of the criminal enterprise, even though the accomplice may never have intended that the second felony would be committed. *Boggs v. Commonwealth*, 153 Va. 828, 836, 149 S.E. 445, 447 (1929); *Carter v. Commonwealth*, 232 Va. 122, 126-27, 348 S.E.2d 265, 268 (1986). The intended wrongful act need only be criminal and need not be a

felony. *Rollston v. Commonwealth*, 11 Va. App. 535, 544, 399 S.E.2d 823, 828 (1991). As long as the felony actually committed by the principal was a probable consequence of the execution of the originally intended criminal design, the person lending assistance is accountable as a principal in the second degree to the felony subsequently committed. *Brown*, 130 Va. at 738, 107 S.E. at 810; *Rollston*, 11 Va. App. at 542, 399 S.E.2d at 827; 1 *Wharton's Criminal Law* § 258, at 329-30 (11th ed.).

The evidence was sufficient to prove that the wrongful or criminal act which Pee Wee intended to aid and abet Jones and Bey in committing was the robbery of Lawson and Hendricks. Bey had spoken to Lawson and Hendricks about selling them drugs when he went to Pee Wee and asked for the gun. After giving them the gun, Pee Wee remained present, observing the progress of the robbery. The house where Pee Wee was sitting was not Pee Wee's residence. When Pee Wee allowed Bey to use his handgun, he assisted and became a participant in the criminal acts committed by Jones and Bey. Moreover, the fact that Pee Wee remained in the immediate presence of the robbery and interceded to prevent Hendricks from escaping shows that he was present to lend assistance, if needed, during the robbery. Furthermore, Jones' testimony proved that Pee Wee intervened, detained Hendricks as the robbery was in progress, and demanded to know why Lawson had run away. Because Pee Wee had supplied the gun initially, the only reasonable conclusion to be drawn from the evidence is that he felt it necessary to intervene, since Bey and Jones were not competent to finish the jobs themselves. Bey was intoxicated, and Jones allowed Lawson to escape while he was retrieving the five dollars from the ground. In fact, the following day, Pee Wee even told Jones that he thought Bey's handling of the robbery was ''stupid.''

 It is immaterial that Jones did not intend for anyone to be shot or that he did not know that Pee Wee would intervene as he did. ''[T]he law is well settled in Virginia that each co-actor is responsible for the acts of the others, and may not interpose his personal lack of intent as a defense.'' *Carter*, 232 Va. at 126, 348 S.E.2d at 267-68. ''Neither premeditation nor an intent to kill is an element of felony murder''; only malice is required. *Wooden*, 222 Va. at 762, 284 S.E.2d at 814; *Spain v. Commonwealth*, 7 Va. App. 385, 396, 373 S.E.2d 728, 733 (1988).

> Where a person . . . engages in [felonious] activity . . . and homi-
> cide . . . results, the malice inherent in the [original felony] pro-
> vides the malice prerequisite to a finding that the homicide was
> murder. And, all of the criminal participants in the initial felony
> may be found guilty of the felony-murder of the victim so long as
> the homicide was within the *res gestae* of the initial felony.

*Wooden*, 222 Va. at 762, 284 S.E.2d at 814; *see Haskell*, 218 Va. at 1043, 243 S.E.2d at 483; *King*, 6 Va. App. at 355, 368 S.E.2d at 706.[1] The intent to rob includes the shared intent among all co-actors to commit all the elements of robbery, including the use of such force as would be expedient for the accomplishment of their purpose. An inci- dental and probable consequence of the use of a firearm in the com- mission of a robbery is that someone will get killed. *Carter*, 232 Va. at 126, 348 S.E.2d at 268. Therefore, Jones is deemed to have shared Pee Wee's intent to shoot and kill Hendricks.

Jones argues that Pee Wee's killing of Hendricks did not ''further'' the robbery because Pee Wee's intervention was completely unrelated to the robbery and was not intended by Jones. As we have stated, the facts show that Pee Wee was a participant in the plan to rob Hendricks and Lawson and that he intervened to prevent Hendricks from escap- ing. It is immaterial that Jones did not specifically intend for Pee Wee to act as he did.

Jones also argues that the robbery was complete by the time Pee Wee intervened; thus, Pee Wee could not have ''furthered'' the rob- bery by killing Hendricks. We do not agree. The robbery was not complete. The fact that Jones and Bey had taken money from Hen- dricks and Lawson does not make the robbery complete. Neither Jones nor Bey had secured all the money of the victims, and neither had left the crime scene. When Pee Wee intervened, Jones was still holding the gun against Hendricks. Thus, the robbery was still in progress.

Viewing the evidence in the light most favorable to the Commonwealth, it was sufficient to prove that Pee Wee was Jones'

---

[1] We reject the Commonwealth's contention that because the defendant in *King* was indicted for felony homicide (second degree murder, Code § 18.2-33), the rule under *King* does not apply to felony murder (first degree murder, Code § 18.2-32). The only difference between the two offenses is the underlying felony that results in the killing. Because causation is a necessary element in felony murder, as well, *see Haskell*, 218 Va. at 1043, 243 S.E.2d at 483, the principles in *King* concerning the causal link between the felonious act and the killing apply equally to both Code §§ 18.2-32 and 18.2-33.

accomplice in the robbery, and Pee Wee's killing Hendricks was part of the common criminal enterprise. Consequently, Jones is criminally liable for the murder committed during the course of the robbery. We affirm Jones' conviction of felony murder.

*Affirmed.*

Benton, J., and Fitzpatrick, J., concurred.