COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Overton[*]
Argued at Norfolk, Virginia


ERIC R. COOKE, S/K/A
 ERIC RODNEY COOKE

                                        MEMORANDUM OPINION[**] BY
v.    Record No. 2206-97-1              JUDGE JAMES W. BENTON, JR.
                                              MARCH 23, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                     Johnny E. Morrison, Judge

            (J. Edgar Demps, on brief), for appellant.
            Appellant submitting on brief.

            (Mark L. Earley, Attorney General; Ruth Ann
            Morken, Assistant Attorney General, on
            brief), for appellee.  Appellee submitting on
            brief.


     A jury convicted Eric R. Cooke of attempted second degree

murder, use of a firearm while attempting to commit murder, and

accessory after the fact of attempted robbery.  Although Cooke

was also charged with attempted robbery, the jury acquitted him

of that charge.  The issue on appeal is limited to whether the

evidence was sufficient to prove beyond a reasonable doubt the

offenses of attempted second degree murder and use of a firearm

_____

     [*]Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

     [**]Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

while attempting to commit murder. For the reasons that follow, we affirm those convictions.

## I.

In reviewing the sufficiency of the evidence, "we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). Whether the evidence so viewed is sufficient to prove guilt beyond a reasonable doubt is a question of law, not fact. Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Viewed in the light most favorable to the Commonwealth, the evidence proved that at 9:00 a.m. Cooke's brother approached a bank in Portsmouth, pulled a mask over his face, and attempted to enter the bank. A teller saw him approaching the bank with a gun and locked the front doors before he could enter. Cooke's brother then ran across the street, through a wooded field, and toward a parking lot behind another building. The teller lost sight of Cooke's brother as he passed behind the building. However, a man outside the bank saw these events, drove to a street behind the other building, and saw Cooke's brother enter a burgundy colored car. When the car sped away, the man returned to the bank and notified one of the bank's employees of the car's license plate number.

A few minutes later, Officer Ciccone, who was in uniform and driving a marked police vehicle, saw Cooke's car and noted that it matched the description given by the man who reported the car's license number. When the officer activated his emergency lights, the car stopped. Cooke was the driver, and his brother was the only passenger. The officer stepped out of his vehicle, drew his gun, and ordered Cooke and his brother to place their hands on top of their heads. However, Cooke speedily drove away through a parking lot and into an adjacent field. As the officer pursued them, Cooke lost control of the car in the field and crashed into a fallen tree.

Cooke's brother first exited the car. He crouched and fired at the officer several times with a revolver. As this was occurring, Cooke came out the driver's side window. The officer testified "I'm not at this point certain if [Cooke] had a gun at all. In my mind I saw two guns, but I just trained on the one [Cooke's brother] had, because he was the one firing at me." The officer took cover, concentrated on Cooke's brother, and fired his gun four times.

Cooke and his brother ran across the field pursued by the officer. Cooke's brother, who was running approximately five feet from Cooke, turned and again pointed his gun at the officer. The officer fired his gun two times, striking Cooke's brother in the leg. Cooke's brother dropped his gun and

- 3 -

continued to run. At the end of the field, Cooke and his brother ran in different directions. The officer lost sight of Cooke's brother and continued to chase Cooke.

Cooke ran through the backyards of several residences. As the officer followed Cooke around a corner, he saw Cooke turn and point something at him. The officer testified that he "felt threatened [and] . . . thought [he] saw a gun in his hand again." The officer fired his gun twice at Cooke, who ran away. Other officers captured Cooke in a nearby neighborhood. Cooke was not armed when the officers seized him. The officers recovered the gun Cooke's brother dropped in the field.

The jury acquitted Cooke of the robbery charge but convicted him of being an accessory after the fact of attempted robbery, attempted second degree murder, and use of a firearm while attempting to commit murder.

## II.

Second degree murder "is defined simply as a malicious killing." Turner v. Commonwealth, 23 Va. App. 270, 274, 476 S.E.2d 504, 506 (1996). To convict an accused of attempted second degree murder, the Commonwealth must prove that the accused (1) specifically intended to kill and (2) performed an overt but ineffectual act toward the killing's commission. See Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977); Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d

- 4 -

449, 451 (1969).  This act "'must be some appreciable fragment of the crime committed, it must be in such progress that [the crime] will be consummated unless interrupted by circumstances independent of the will of the attempter.'"  Lewis v. Commonwealth, 15 Va. App. 337, 340, 423 S.E.2d 371, 373 (1992) (citation omitted).  The Commonwealth argues on brief that Cooke's guilt was established either as a principal in the first degree or as a principal in the second degree.

Cooke contends the evidence failed to prove he had a gun. The Commonwealth first argues the evidence proved Cooke had a gun and aimed it at the officer.  In support of that position, the Commonwealth notes that the officer fired his gun at Cooke because he believed that Cooke pointed a gun at him.  The Commonwealth also points to evidence that proved the officer was prohibited, pursuant to police policy, from using deadly force except in self-defense or in defense of another person.  The Commonwealth argues that the "jury was entitled to infer from this evidence that [Cooke] had a gun."  We disagree.

> Where the Commonwealth, in a criminal case, undertakes to prove the guilt of the accused by circumstantial evidence, as it did in the present case, not only must it prove the circumstances, but it must overcome the presumption of innocence and establish his [or her] guilt beyond a reasonable doubt.  All necessary circumstances proved must be consistent with guilt and inconsistent with innocence.  It is not sufficient that the evidence create a

> suspicion of guilt, however strong, or even
> a probability of guilt, but must exclude
> every reasonable hypothesis save that of
> guilt.  To accomplish that the chain of
> circumstances must be unbroken and the
> evidence as a whole must be sufficient to
> satisfy the guarded judgment that both the
> corpus delicti and the criminal agency of
> the accused have been proved to the
> exclusion of any other reasonable hypothesis
> and to a moral certainty.

Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

The officer testified that when Cooke and his brother first exited their vehicle, he focused on Cooke's brother who had a gun in his hand.  The officer testified "I saw the gun in [Cooke's brother's] hand.  I'm not at this point certain if [Cooke] had a gun at all.  In my mind I saw two guns, but I just trained on the one [Cooke's brother] had, because he was the one firing at me at that time."  In the following testimony on cross-examination, the officer confirmed his doubt:

> Q  And you're not telling us, the jury,
> under oath that you actually saw a gun in
> his hand?
>
> A  No.  Like I say, I don't recall seeing
> one, but in the back of my mind, I saw two
> weapons, but I couldn't swear that [Cooke]
> had one.

Later, when the officer had lost sight of Cooke's brother and was chasing Cooke, he turned the corner near an apartment and saw Cooke pointing "something."  The officer then shot twice at Cooke.  The officer testified however that he was not "able

to determine what [Cooke] pointed at [him]" and shot because he "thought [he] saw a gun."  No gun, other than the one dropped by Cooke's brother, was ever recovered.

The Commonwealth's proof cannot rise above the officer's uncertainty.  "[T]he fact that [the officer] merely thought or perceived that [Cooke] was armed is insufficient to prove that [Cooke] actually possessed a firearm."  Yarborough v. Commonwealth, 247 Va. 215, 219, 441 S.E.2d 342, 344 (1994) (footnote omitted).  "'It is, of course, a truism of the criminal law that evidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt.  Conviction cannot rest upon conjecture. The evidence must be such that it excludes every reasonable hypothesis of innocence.'"  Foster v. Commonwealth, 209 Va. 326, 330-31, 163 S.E.2d 601, 604 (1968).  In view of the officer's uncertainty, the jury could not have concluded that Cooke pointed a gun at the officer.  Thus, the Commonwealth has failed to prove that Cooke pointed a gun and thereby performed an overt act necessary to consummate the crime of attempted second degree murder.

The Commonwealth next argues that Cooke may be held liable as a principal in the second degree.

> "A principal in the second degree is one not
> the perpetrator, but present, aiding and
> abetting the act done, or keeping watch or

> guard at some convenient distance." As for
> what constitutes "aiding and abetting," it
> is clear that mere presence and consent will
> not suffice. The defendant's conduct must
> consist of "inciting, encouraging, advising
> or assisting in the murder." It must be
> shown that the defendant procured,
> encouraged, countenanced, or approved
> commission of the crime. "To constitute one
> an aider and abettor, he must be guilty of
> some overt act, or he must share the
> criminal intent of the principal."

Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) (citations omitted). The Commonwealth argues that because the evidence was sufficient to support the conviction of Cooke as an accessory after the fact of attempted robbery, the evidence was therefore sufficient to convict Cooke of attempted second degree murder based on the actions of his brother. We agree.

Cooke testified that he was not aware that his brother had attempted to rob a bank until after the officer stopped them. When the officer approached with his gun drawn, Cooke's brother told Cooke that he had done "something real stupid . . . tried to rob a bank." He told Cooke, "I'm not going to jail . . . I'm going to bust," a phrase Cooke understood to mean "shoot somebody." Cooke testified that he drove away from the officer so that his brother would not shoot the officer.

The jury's finding of not guilty on the attempted robbery indictment signifies that the jury believed Cooke was not aware

of the robbery until his brother made the disclosure in the car. However, Cooke's testimony was sufficient to prove his guilt as a principal in the second degree because Cooke knowingly assisted his brother to resist arrest. While he may not have shared the specific intent of his brother to shoot the officer, the Commonwealth is not required to prove specific intent. Id. at 540, 399 S.E.2d at 826. All the Commonwealth need prove was that Cooke "'share[d] the criminal intent'" of his brother, which "mean[s] that '[Cooke] must [have] either know[n] or ha[d] reason to know of the principal's criminal intention and . . . intend[ed] to encourage, incite, or aid the principal's commission of the crime.'" Id.

Cooke was aware that his brother intended to resist arrest. The jury's finding of guilt on the accessory after the fact indictment indicates that they chose to disbelieve Cooke's testimony that his actions justifiably arose out of a concern for the safety of his brother and the officer.

> The jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused. They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). The jury chose to believe that Cooke's intent was to assist his brother escape.

As a principal in the second degree, Cooke's criminal liability is not limited solely to acts committed by him in furtherance of a criminal act. It also encompasses "all crimes committed by [his brother] in furtherance of the criminal enterprise, even though [Cooke] may never have intended that the [crimes committed by his brother] would be committed." Jones v. Commonwealth, 15 Va. App. 384, 387, 424 S.E.2d 563, 565 (1992). After his arrest, Cooke told an officer that his brother had a mask, gloves, and "a yellow towel that he used to wipe the gun off." That evidence and Cooke's testimony proved Cooke was aware that his brother had a gun and intended to use it. Therefore, not only did Cooke's actions further the criminal acts of his brother, but his brother's use of a gun during the criminal acts was "a probable consequence of the execution of the originally intended criminal design." Id. at 388, 424 S.E.2d at 565.

Additionally, the jury was not required to accept Cooke's explanation that he panicked and that his running away from the officer after the crash was not intended to aid or abet his brother. Although Cooke's running "does not raise a presumption of guilt[, it] . . . is . . . a circumstance to be considered by

the jury."  Jones v. Commonwealth, 208 Va. 370, 374, 157 S.E.2d

907, 910 (1967) (citation omitted).  The jury chose to

disbelieve Cooke's explanation.

> While mere presence at the scene of a crime
> or knowledge that a crime is going to be
> committed does not constitute aiding and
> abetting, accompanying a person with full
> knowledge that the person intends to commit
> a crime and doing nothing to discourage it
> bolsters the perpetrator's resolve, lends
> countenance to the perpetrator's criminal
> intentions, and thereby aids and abets the
> actual perpetrator in the commission of the
> crime.

Pugliese v. Commonwealth, 16 Va. App. 82, 94, 428 S.E.2d 16, 25

(1993).  The jury could have found that Cooke's actions

supported his brother's attempt to escape and the decision to

use a gun to effect the escape.  Thus, the evidence was

sufficient to support the jury's verdict on the attempted second

degree murder indictment.

We likewise find the evidence sufficient to convict Cooke

of using a firearm in the commission of a felony.  The

Commonwealth correctly points out that an accused may be held

vicariously liable for the use of a firearm by another person if

the accused and the other person "'assemble[d] themselves

together with an intent to commit a wrongful act, the execution

whereof makes probable, in the nature of things, [the use of the

firearm.]'"  Carter v. Commonwealth, 232 Va. 122, 126-27, 348

S.E.2d 265, 268 (1986) (citation omitted).  It was foreseeable

that, during their attempt to escape, Cooke's brother would fire his gun at the officer.  Cooke is therefore liable for his brother's use of his gun during the escape.

For these reasons, we affirm the convictions of attempted second degree murder and use of a firearm while committing a felony.

Affirmed.
