COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia

MARK O'HARA WRIGHT

MEMORANDUM OPINION[*] BY

v.      Record No. 0585-13-3          JUDGE WILLIAM G. PETTY
                                       NOVEMBER 18, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

Justin L. Corder (John C. Holloran; The Law Offices of John C.
Holloran, on briefs), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Mark O'Hara Wright was convicted, by a jury, of felony malicious bodily injury by

means of a caustic substance in violation of Code § 18.2-52, felony assault and battery of a law

enforcement officer in violation of Code § 18.2-57, obstruction of justice in violation of Code

§ 18.2-460, petit larceny in violation of Code § 18.2-96, grand larceny from a person in violation

of Code § 18.2-95, and contributing to the delinquency of a minor in violation of Code

§ 18.2-371. On appeal, Wright argues that the trial court erred in holding that the evidence was

sufficient to convict him of all of these offenses. For the reasons stated below, we affirm

Wright's convictions.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

Wright challenges the sufficiency of the evidence; therefore, we must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 923 (2008)).

A. First Assignment of Error

Wright first argues that the evidence was insufficient to convict him of grand larceny from the person of another. Specifically, Wright argues that there was insufficient evidence to demonstrate that he took property from the security officer's person or was aware of the security officer's presence in the parking lot.[1] We disagree.

---

[1] Additionally, and for the first time, Wright argues on brief that there was insufficient evidence to establish that the beer taken from the security officer was worth $5 or more. Under

Code § 18.2-95 provides, in relevant part, "Any person who commits larceny from the person of another of money or other thing of value of $5 or more . . . shall be guilty of grand larceny." Moreover, Code § 18.2-18 provides that a principal in the second degree "may be indicted, tried, convicted and punished in all respects as if a principal in the first degree."[2]

> "A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime. In order to make a person a principal in the second degree, actual participation in the commission of the crime is not necessary. The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime. If he was present lending countenance, or otherwise aiding while another did the act, he is an aider and abettor or principal in the second degree."

Thomas v. Commonwealth, 279 Va. 131, 156-57, 688 S.E.2d 220, 234 (2010) (quoting Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005)). The jury was instructed, without objection by Wright, that a principal in the second degree is one who was present and "intended by his words, gestures, signals or actions to encourage, advice, urge, or help the person who actually committed the crime." Furthermore, "[a] person assisting his confederate to commit a crime is accountable for all crimes committed by the confederate in furtherance of the criminal enterprise, even though the accomplice may never have intended that

Rule 5A:12(c), "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." See McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (en banc) ("Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal."); Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991) ("We do not consider this argument, however, since it was not raised in the petition for appeal and no appeal was granted by this Court on that issue."). At oral argument, Wright urged this Court to address this argument under an ends of justice exception. See Oral Argument Audio at 12:10 to 13:50. However, "unlike Rule 5A:18, Rule 5A:12 contains no 'good cause' or 'ends of justice' exceptions." Thompson v. Commonwealth, 27 Va. App. 620, 626, 500 S.E.2d 823, 825 (1998). Accordingly, we will not address the issue of the value of the beer.

[2] Certain felony offenses are excepted from this rule. Those exceptions are not applicable here.

the second felony would be committed." Jones v. Commonwealth, 15 Va. App. 384, 387, 424

S.E.2d 563, 565 (1992). "As long as the felony actually committed by the principal was a

probable consequence of the execution of the originally intended criminal design, the person

lending assistance is accountable as a principal in the second degree to the felony subsequently

committed." Id. Finally, "[b]ecause larceny is a continuing offense, anyone who knows that

personal property is stolen and assists in its transportation or disposition is guilty of larceny."

Moehring v. Commonwealth, 223 Va. 564, 568, 290 S.E.2d 891, 892 (1982).

The jury heard testimony that on March 25, 2012, Mark Wright drove his Dodge Caravan

to a grocery store in Harrisonburg, Virginia. In the van were Wright's brother, Robert, and

Wright's stepson, C.W. While C.W. remained in the van, Wright and Robert together entered

the store, selected some deli sandwiches and beer, and together walked out of the store without

paying for them. A security officer for the store followed the brothers into the parking lot. The

security officer identified himself as a store employee and asked Robert for a receipt. The

brothers ignored the request and approached their van; Robert headed toward the passenger side

of the van, and Wright headed toward the driver's side of the van.

The security officer confronted Robert and took the case of beer from his hands. In

response, C.W. jumped from the van and assumed an aggressive fighting stance in front of the

security officer. Robert then stole the case of beer from the security officer's possession. During

the confrontation, the security officer heard Wright from the other side of the van say, "Let's go,

let's just go, let's go." The brothers and C.W. got in the van and left.

Wright essentially argues that the van created a barrier that prevented him from taking

part in—and being held accountable for—any action that took place on Robert's side of the van.

This is simply not the case. The evidence was overwhelming that Wright encouraged and

assisted Robert in committing the crime of larceny. Wright drove Robert to the store, entered the

- 4 -

store with Robert, stole items at the same time as Robert, exited the store with Robert, and drove Robert away from the scene of the crime. Indeed, the evidence demonstrated that Wright said, "Let's go, let's just go, let's go," as soon as Robert took the beer from the security officer. Wright then hurried everyone into the van and drove away. Wright is thereby "accountable for all crimes committed by [Robert] in furtherance of the criminal enterprise, even though [Wright] may never have intended that the second felony would be committed." Jones, 15 Va. App. at 387, 424 S.E.2d at 565.

Further, a fact finder could reasonably conclude that being confronted by store personnel and subsequently engaging in a struggle for possession of the stolen merchandise were probable consequences of the originally intended crime of larceny. Thus, Wright, as "the person lending assistance[,] is accountable as a principal in the second degree to the felony subsequently committed." Id.

There was sufficient evidence to support the jury's finding that Wright encouraged and assisted Robert in the commission of the crime of larceny and was, therefore, guilty as a principal. Accordingly, we affirm the jury's verdict.

B. Second, Third, and Fourth Assignments of Error

Wright's next three assignments of error relate to the second crime scene, at the aunt's house, and concern crimes committed against Deputy Greathead. Thus, we will address them together. In these assignments of error, Wright argues that the evidence was insufficient to convict him of felony malicious bodily injury by means of a caustic substance, felony assault and battery of a law enforcement officer, and obstruction of justice. Specifically, Wright argues that he was not seen in the house by a police officer until he was actually arrested and was not seen in the basement room when Deputy Greathead was accosted; therefore, the evidence was insufficient to convict him. We disagree.

Wright argues that there was no evidence or testimony that *directly* proved he was in the basement of his aunt's house at the time of the crimes against Deputy Greathead. This may be true. There was ample circumstantial evidence, however, from which the jury could draw a reasonable inference that Wright was in the basement of the house and was an active participant in the crimes for which he was convicted.

The jury heard evidence that Wright's van, with the license plates removed, was parked on the aunt's property. The police secured the perimeter of the property and had control over who entered or left the house. One of the women in the house told Deputy Greathead that she had advised whoever was in the basement to give *themselves* up; she later clarified that she believed her nephews, Wright and Robert, were in the basement. At the time when the house was evacuated due to a chlorine-like odor, there was no indication that anyone remained on the main floors of the house. When Deputy Greathead entered the house, he heard "coughing and commotion" in the basement. When the police finally entered the house, Wright and Robert were the only individuals in the house, and they were both in the basement. The beer containers and sandwich wrappers from the items stolen from the store were found in the basement.

Moreover, the jury heard evidence from which it could reasonably infer that Wright released the caustic substance. It is uncontested that Deputy Greathead encountered Robert in the basement, in a room containing a water heater. The jury heard testimony that the basement was dark and that Deputy Greathead was using a flashlight. Deputy Greathead ordered Robert, who was holding a beer bottle, to get down on the ground. In spite of Deputy Greathead's commands "to get back, get down," Robert continued to approach. Deputy Greathead's gun was drawn and he was using his flashlight to cover Robert's movements. After Robert placed the beer bottle on the water heater, the deputy "told him to back up and still raise his hands." It was at that point that the cloud of caustic substance was released.

- 6 -

Although there was no *direct* evidence indicating that Wright was in the room with the water heater, the jury saw pictures of the dimly lit room with the water heater and could reasonably infer that Wright was present in the room, hiding behind the water heater. The jury could also reasonably infer that the reason Deputy Greathead did not see Wright was that the room was dark and that the deputy's attention was focused on Robert, who was disobeying the deputy's commands. Further, the jury could reasonably infer that Wright released the gas while Robert's hands were raised.

Therefore, viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to support the jury's verdict that Wright caused malicious bodily injury to Deputy Greathead by means of a caustic substance, assaulted and battered Deputy Greathead, and deployed the gas as a weapon, which constituted the use of force in an attempt to impede the police. Accordingly, we affirm the jury's verdict.

## C. Fifth Assignment of Error

In his final assignment of error, Wright argues that the evidence was insufficient to convict him of contributing to the delinquency of a minor. Specifically, Wright argues there was no evidence to demonstrate that C.W. was involved in the shoplifting or knew that a shoplifting had occurred. We disagree.

Wright was convicted under Code § 18.2-371, which makes it a crime for an adult to "willfully contribute[] to, encourage[], or cause[] any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected." Thus, the disjunctive in Code § 18.2-371 prohibits conduct that *encourages or causes* a child to be rendered delinquent. Code § 18.2-371 incorporates Code § 16.1-228, which defines a delinquent child as one "who has committed a delinquent act." A delinquent act is "an act designated a crime under the law of this Commonwealth." Code § 16.1-228.

- 7 -

The jury heard evidence that Wright made the decision to get into his van, along with his brother and a minor child, C.W., and to drive to the grocery store with the intent to steal food and beer. Wright and Robert left C.W. in the get-away van while Wright and Robert entered the grocery store to steal the food and beer. When the security officer followed them out of the store, C.W. jumped out of the van, assumed an aggressive fighting stance in front of the security officer, and said, "I'm going to fuck you up. I'll beat your ass, and I'm not afraid to go back." C.W.'s actions actively thwarted the security officer's attempt to reclaim stolen merchandise, and the jury reasonably could conclude that C.W. intended to commit a criminal assault or a robbery. The jury heard that a short time after the incident, C.W. stated to an investigating officer that the incident was "not really robbery, but more like shoplifting." A jury could reasonably conclude that these facts indicate that Wright created the situation that caused or encouraged C.W. to commit a crime, and, therefore, be delinquent.

Therefore, the evidence was sufficient for a rational trier of fact to conclude that Wright contributed to the delinquency of a minor. Accordingly, we affirm the jury's verdict.

III.

For the foregoing reasons, we affirm Wright's convictions.

Affirmed.