COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Ortiz and Lorish
Argued at Norfolk, Virginia


DARRIUS CORNELL WHITE

v.      Record No. 0848-24-1

COMMONWEALTH OF VIRGINIA                MEMORANDUM OPINION* BY
                                         JUDGE JUNIUS P. FULTON, III
DARRIUS CORNELL WHITE                          JUNE 24, 2025

v.      Record No. 0849-24-1[1]

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Trevor Jared Robinson for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Darrius Cornell White of aggravated murder,

two counts of robbery causing the death of another person, and three counts of using a firearm in the

commission of a felony.  The trial court sentenced White to three terms of life imprisonment plus 13

years of incarceration.  White challenges the sufficiency of the evidence to sustain his convictions.

For the reasons that follow, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] White filed two notices of appeal in this case, and this Court assigned them separate
record numbers.  Upon the Commonwealth's request, and without objection from White, the
cases are consolidated for purposes of briefing and argument.

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

At around 4:00 p.m. on December 13, 2021, Troye Harris left his gold 2000 Lexus running in front of his home at 3007 Welcome Road in Chesapeake. When he returned outside about 15 minutes later, Harris was shocked to find that his car was gone. Harris searched his neighborhood, but did not see his car, so he reported the theft to the police.

Just before 5:00 p.m. that same day, Lakisha Humphrey was in her car parked at a 7-Eleven store on Haygood Road in Virginia Beach. Humphrey was waiting for her son, who was inside the store making a purchase. She noticed a gold Lexus, moving in an erratic manner, parking next to her vehicle. Two men got out of the car, and conversed on the sidewalk near the storefront. One of them got back into the Lexus and moved it so that it blocked Humphrey's exit from her parking space. The other man pulled a red bandana over his face, approached the driver's side of Humphrey's car, and knocked on the window. Humphrey called her son to alert him of the situation. As Humphrey's son exited the store, the man with the bandana got into the Lexus, and the car left the scene. Humphrey reported the incident to the police.[2]

---

[2] The Commonwealth introduced surveillance camera video footage of the incident as Commonwealth's Exhibit 15.

After running some errands on the afternoon of December 13, 2021, just after 5:00 p.m., Steven Smith and his wife, Annie Smith, stopped at the Harris Teeter gas station at the intersection of Haygood and Independence Streets in Virginia Beach. Annie kept a holster and a .45 caliber Springfield Armory firearm in the left center console of the vehicle for protection. Typically, Annie covered the gun with a black ball cap. The Harris Teeter location was about .8 mile from the 7-Eleven where Humphrey had been accosted shortly before.

Annie remained in the front passenger seat of the Mustang GT while Smith got out to pump gas into the car. Harris's stolen Lexus stopped at the pump in the lane opposite Smith. Michael White, Darrius White's brother, quickly exited the passenger seat of the car. As Smith was placing his debit card back into his wallet, Michael, wearing a red bandana over his face, appeared and pointed a gun at Smith's forehead. Michael yelled for Smith to turn over everything he had. Without hesitation, Smith gave Michael the debit card and his wallet. Multiple times, Michael demanded to know if Smith had given him everything. Smith responded that he had turned over everything that he had. Michael ran back to the Lexus, then returned to where Smith was standing, before once again returning to get into the Lexus. Smith began to re-enter his car, thinking that the robbery was over.

However, defendant White, armed with a gun, exited the driver's side of the Lexus, moved around the gas pumps to Smith, held the gun to the side of Smith's head, and ordered him back out of the car. As he complied, Smith told Annie that they were being robbed, and for her to give him the car keys. In response to White's demands, Smith repeated that he had turned over everything. Smith stepped away from the car, and White reached inside. White was "waist deep" inside the vehicle. White yelled at Annie, demanding that she give him everything that she had. "Almost

instant[ly]," Smith heard three gunshots. White then returned to the Lexus, got inside, and he and Michael left the scene.[3]

Annie sustained three gunshot wounds to the neck and chest. Smith immediately called 911; police and rescue personnel attempted lifesaving measures, but Annie was pronounced dead at the scene. The gun that Annie usually kept in the car was missing from its holster.

About an hour and a half after the shooting of Annie occurred, Harris was driving around the area near his home, which bordered Norfolk, looking for his stolen car. Harris saw his Lexus on a dark street in Norfolk. Harris followed the Lexus for about five minutes, then stopped behind it at a traffic light in an illuminated area. On foot, Harris approached the driver's door of the car and opened it. Two dark-skinned males were in the front seat. Harris demanded his car, and the two men got out of the Lexus and left.

Harris then notified police that he had recovered his car. That same evening, police collected surveillance camera footage of Harris's stolen Lexus arriving at Harris Teeter just before the shooting, and of the shooting itself. As a result, the police seized Harris's Lexus to search it for evidence relating to Annie's killing. The police found both White's and Michael's fingerprints in the car.

A search of the Smiths' Mustang revealed a spent cartridge casing on the back seat on the driver's side and two cartridge casings on the rear floorboard. There were three bullet holes in the passenger side door. Two bullet fragments were in the door. One bullet was recovered from Annie's clothing during the autopsy.

Late on December 14 and into December 15, 2021, police received information that White and Michael were at a local hospital. The police arrived and detained them both. White was

---

[3] The incident was captured by surveillance cameras, and the Commonwealth introduced videos and still photographs of the crimes at trial.

wearing a black hoodie with the same distinctive markings on the front that he had worn at the time of the shooting.[4]

After White and Michael were detained, the police searched their home in Chesapeake. The police found a red bandana similar to the one Michael wore during the shooting, as well as the gun that was stolen from the Smiths' car. The police also found a second firearm in the home, a 9-millimeter Ruger. Forensic testing proved that the 9-millimeter Ruger fired the bullets and cartridge casings recovered from the Mustang, as well as the bullet recovered from Annie's clothing. On the same day as the search of White's residence, Smith's wallet was found discarded along a Virginia Beach roadway.

In an interview with the police, White initially denied involvement in both the incident at the 7-Eleven or any later incident at another gas station. The police told White that there was "video everywhere," and they knew details about what he had done on December 13, 2021. Eventually, White claimed that he and his brother were driving the Lexus, but someone else had stolen it. He admitted that he had positioned the Lexus to block in another person at the 7-Eleven.

Asked specifically about the later incident at the Harris Teeter gas station, White admitted that while he was inside the car, the woman "had a gun" and "she was about to fight." White told police "[but] I had my gun on me. Before she had a chance to fire at me, I fired at her." White said he fired once or twice. After the shooting, he reached in the car and took the woman's gun. Then, he and his brother got into the Lexus and drove toward home. White said that they were confronted by the owner of the Lexus at a stoplight in Norfolk and they relinquished the car without incident. White falsely claimed that he had since sold both the Ruger he used to shoot Annie and the gun he stole from her.

---

[4] Smith testified about the markings on the hoodie worn by the man who robbed him and shot Annie.

At the conclusion of the evidence, defense counsel conceded that the evidence proved White killed Annie. Nonetheless, defense counsel moved to strike the aggravated murder conviction, contending that the evidence did not prove the killing was willful, deliberate, and premeditated. Counsel claimed that without such evidence of intent, the trial court should strike the aggravated murder charge and reduce it to first-degree murder. Defense counsel asserted that in his statement to the police, White said he did not know what Michael planned to do when he initially got out of the car at Harris Teeter, thus indicating that he did not know about the ongoing robbery of Smith. Counsel therefore claimed, alternatively, that the charge should be reduced to second-degree murder. Concerning the robbery and the related firearm charges, counsel reasserted White's statement that when he became actively involved in the incident, he did not know about Michael's robbery of Smith.[5] The trial court denied the motion to strike. White presented no evidence.

The trial court instructed the jury that to convict White of aggravated murder, they were required to find: (1) that he killed Annie; (2) that the killing was willful, deliberate, and premeditated; and (3) that the killing occurred in the commission of a robbery or attempted robbery. The instruction permitted the jury to convict White of first-degree murder if he committed elements (1) and (2) but not element (3), or if he committed elements (1) and (3) but not element (2). The instruction also stated that if the jury found the evidence proved element (1) and that the killing was malicious, but elements (2) and (3) were not proven, it should convict White of second-degree murder.

The jury convicted White of the aggravated murder of Annie, robbery of both Smith and Annie resulting in serious bodily injury or death, and three counts of using a firearm in the

---

[5] Defense counsel also contended that the indictments for robbery charged that White took property from Smith and Annie with a value of $5 or more and there had been no proof of value of the stolen items. However, the trial court amended the indictments to remove the language concerning the value of the stolen property.

commission of a felony. The trial court sentenced White to three life terms of imprisonment plus 13 years. White appeals.

## ANALYSIS

White's assignments of error contend that the trial court erred in denying his motions to strike because the Commonwealth's evidence failed to "establish a prima facie case" that Annie's killing was "willful, deliberate or premeditated" or that White "participated in a robbery."[6]

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might

---

[6] To the extent that White attempts to raise other challenges to the sufficiency of the evidence in his argument, we do not consider them. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."). Appellate courts are "limited to reviewing the assignments of error presented by the litigant" and cannot "consider issues touched upon by the appellant's argument but not encompassed by his assignment[s] of error." *Banks v. Commonwealth*, 67 Va. App. 273, 289-90 (2017).

differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). "The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'" *Id.* (alteration in original) (quoting *Meade*, 74 Va. App. at 806).

*I. The killing was willful, deliberate, and premeditated.*

The Class 1 felony of aggravated murder includes "[t]he willful, deliberate, and premediated killing of any person in the commission of robbery or attempted robbery[.]" Code § 18.2-31(A)(4). Conceding that the evidence proved that he was the person who shot and killed Annie, White claims that the killing was not willful, deliberate, and premediated. "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). That reasoning process need not be lengthy; the specific intent to kill "may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Rhodes*, 238 Va. at 485 (quoting *Giarratano v. Commonwealth*, 220 Va. 1064, 1074 (1980)); *see also Akers v. Commonwealth*, 216 Va. 40, 48 (1975) ("It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense."). "[E]vidence of a mortal wound

- 8 -

inflicted by a deadly weapon with little or no provocation creates an inference from which the trier of fact may conclude that the killer acted with premeditation." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994). In deciding whether premeditation exists, the jury may consider a combination of factors, including the brutality of the attack and whether more than one blow was struck, the disparity in size and strength between the defendant and the victim, concealment of the victim's body, and the defendant's lack of remorse and efforts to avoid detection. *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982).

White contends that he "was unaware of any plan to kill" Annie or "to cause her any such harm." But the relevant question is not whether White agreed with Michael to shoot and kill Annie, but whether White had the specific intent to kill when he pulled the trigger and shot her three times.

Smith's testimony, as corroborated by the video evidence, was that after Michael robbed him at gunpoint, Michael began to return to the Lexus but went back to Smith in an apparent attempt to demand more of "whatever [Smith] had," before finally getting into the Lexus. Smith then turned to enter the Mustang, believing the robbery was over. But White, armed with a gun, quickly appeared, confronted Smith with the gun, and forced Smith from the driver's door of the Mustang. White reached into the Mustang and went "waist deep" inside the car. "[H]e's yelling at [Annie], "Give me everything you've got" then "almost instant[ly]" there were three shots, striking Annie from close range in the neck and chest and killing her. By White's own admission, he stole Annie's gun and fled the scene with Michael. Additionally, the sudden attack occurred in the close quarters of the car, White was a 22-year-old young man while Annie was a 63-year-old woman, and White fled the scene immediately after the shooting.

From these facts and circumstances, a reasonable finder of fact could conclude beyond a a reasonable doubt that in the moments before the shooting, White, dissatisfied with the proceeds

of the robbery of Smith, developed the specific intent to rob and kill Annie and that the killing

was willful, deliberate, and premeditated.  A reasonable finder of fact thus could conclude

beyond a reasonable doubt that White was guilty of aggravated murder.

> II. *White was a principal in the second degree when he participated in the robbery of Smith.*

White contends that Michael, acting alone, robbed Smith and that White "played no part

in the taking of the personal property of" Smith.[7]  Thus, he maintains he was not responsible for

the robbery of Smith.  We disagree.

Robbery is the "taking, with intent to steal, of the personal property of another, from his

person or in his presence, against his will, by violence or intimidation." *Jones v.

Commonwealth*, 70 Va. App. 307, 316-17 (2019) (en banc) (quoting *Jay v. Commonwealth*, 275

Va. 510, 524 (2008)).  "A principal in the first degree is the actual perpetrator of the crime.  A

principal in the second degree . . . is one who is present, actually or constructively, assisting the

---

[7] To the extent that White now argues that the evidence proved that he was not involved in a robbery of Annie, we do not consider this contention.  White did not raise this specific challenge to the sufficiency of the evidence in his motion to strike.  "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).  "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).  "Not just any objection will do.  It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).  White did not preserve for appellate review a challenge to the sufficiency of the evidence to prove robbery of Annie, and we will not consider it here.  Although there are exceptions to Rule 5A:18, White has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

In any event, we note that when White exited the Mustang immediately after shooting Annie, the gun that Annie customarily kept in the console of the car was missing.  The police found the stolen gun in White's residence, thus connecting him to the incident and proving his guilt of robbing Annie.

perpetrator in the commission of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372 (1967)). A "principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree." *Allard v. Commonwealth*, 24 Va. App. 57, 62 (1997). "A person assisting his confederate to commit a crime is accountable for all crimes committed by the confederate in furtherance of the criminal enterprise . . . ." *Owens v. Commonwealth*, 54 Va. App. 99, 104 (2009) (quoting *Jones v. Commonwealth*, 15 Va. App. 384, 387 (1992)).

There is no dispute that Michael committed the robbery of Smith by holding a gun to Smith's head, demanding Smith's property, and taking Smith's wallet and debit card. But a reasonable fact finder could also find from the evidence that White assisted Michael in robbing Smith while he pumped gas into his car. The Commonwealth's evidence proved that White, with Michael as his passenger, drove the stolen Lexus into the Harris Teeter gas station and stopped directly across the gas pumps from Smith's car. Michael got out immediately, went around the gas pumps, put a gun to Smith's head, and demanded his property. Smith immediately relinquished his wallet, and Michael continued to demand more. Meanwhile, White remained in the driver's seat of the Lexus, ready to remove them from the scene quickly. When Michael returned to the Lexus, White then immediately got out of the car, accosted Smith with his own gun, and made more demands of both Smith and Annie.

Upon these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that White participated in the robbery of Smith at least as a principal in the second degree and that he was guilty of that offense. We thus find that the trial court did not err in denying White's motion to strike the evidence.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*