COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia

RAEKWON MCFAIL

v.     Record No. 1279-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 20, 2024

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
S. Anderson Nelson, Judge

John A. Terry (Bagwell & Bagwell, PC, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant Raekwon McFail appeals his conviction, following a bench trial, for malicious

wounding by mob, in violation of Code § 18.2-41. McFail asserts that the evidence is insufficient to

support his conviction. For the following reasons, we disagree and affirm the conviction.

I. BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.

Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v.

Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26

Va. App. 335, 348 (1998)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

So viewed, the record shows that a fight broke out at a birthday party in the early morning hours of August 15, 2020. Several of the combatants, McFail and Xavier Tucker (Xavier), were known members of the "T4L" street gang while others, Alexis McFail (Alexis), Tiara Barksdale (Tiara), Christel Hargrove (Christel), and Noah Forbes (Noah), were known T4L associates. McFail, Alexis, and Xavier are all siblings, and Tiara is their first cousin. The record also shows that Tiara's brother, Naseem Barksdale (Naseem), was a known T4L member and had been arrested a month before this incident. The family believed Paris Wood (Paris) had set up Naseem for the arrest.

Mikayla Boyd (Mikayla) attended her cousin's twenty-first birthday party at a residence in Mecklenburg County. Paris and her boyfriend were also present. Later, McFail, Alexis, and Tiara arrived at the gathering. Mikayla testified that while she was inside attending to her sick cousin, she heard a fight outside the residence. When she ran outside to intervene, she saw several people assaulting Paris. Mikayla entered the melee and fought. During the mayhem, Mikayla heard someone yelling about guns. She admitted that there was animosity between the group and Paris, but Mikayla did not know how the fight started.

Mikayla verified that the video of the incident accurately depicted the scene. The Commonwealth played the video for the trial court. The video depicted several women hitting another female, who was wearing a white shirt with circle decals, in the head and abdomen. The video showed a man in a dark-colored striped shirt entering the fray and putting the female being attacked in a headlock; the man continued to punch her several times before releasing her.

At trial, Investigator Jamie King testified as an expert in criminal street gangs and street terminology. King was familiar with McFail, Xavier, Noah, and Naseem through previous encounters. King created a slideshow with still-frame images from the video to identify all the parties. King identified McFail as the man wearing the dark-colored striped shirt holding the female

in a headlock. The investigator identified Paris as the female wearing the white shirt with circles. King noted that in one still shot Xavier appeared to have a handgun with an extended magazine in his waistband. Tiara was in the middle of the horde trading blows with Paris while pinned against a vehicle. King identified Alexis as the female with a white shirt and long braid, Mikayla as the female with blue shorts, and Christel as the female with blonde hair. At one point, the video showed blood spewing from Paris's nose and mouth.

King was also familiar with both McFail and Xavier's voices. He testified that on the video he heard McFail yelling, "I'll die behind Nine, on my set." King asserted that McFail's statement was indicative of gang language and that "Nine" was one of Naseem's nicknames. King explained that the "set" refers to "who he's affiliated with through the gang. It would be a similar statement if somebody said, I swear to God, or, On my mother's grave." Furthermore, King heard Xavier state, "[i]f they touch my sister, I'm going to bust them." King testified that he was aware that Naseem had been arrested, knew that Naseem and McFail were in the same gang, and that many in their circle believed that Paris was the "snitch" that led to Naseem's arrest. In separate criminal proceedings in 2017, McFail affirmed that he and Naseem were T4L gang members.

McFail testified in his own defense. He asserted that he arrived at the birthday party at 8:00 p.m. and stayed there for three hours. As the party was ending, Paris arrived with several people he did not know. According to McFail, the newcomers attacked Tiara suddenly, and a brawl ensued with people fighting in small groups ten feet away from him. He ran to break up the fight between Paris and Tiara, but Paris spat on and punched him. McFail stated that, in response, he put Paris in a headlock and punched her. McFail was unaware how long the fight lasted but indicated that the video footage only depicted the end of the brawl.

On cross-examination, McFail admitted that he arrived at the party with Alexis and Tiara. He denied that he said, "I'll die behind Nine," and insisted that he said, "I'll die behind mine's." He

- 3 -

explained that his comment concerned his sister and cousin fighting. He indicated that "on my set" was a slang phrase, and he was unable to articulate what he intended the phrase to mean when he yelled it that evening. McFail denied being a T4L member and claimed that he signed documents indicating otherwise in the 2017 proceeding only because he faced the possibility of 15 years of incarceration. He further claimed that he did not see Xavier in the video footage and attested he was unaware that Xavier had a gun.

At the conclusion of all the evidence, the trial court convicted McFail. The court found that the video footage of the altercation was the most compelling piece of evidence. The court noted that "it wasn't [McFail's] place to break [the fight] up" and if McFail had been attempting to break up the fight he "should have expected to get hit and spat upon." The trial court found McFail was not credible because he was unable to explain why he had intervened and the meaning behind his words. Instead, the court found the Commonwealth's theory of the case to be more credible, noting "the Commonwealth has laid forth a number of particular instances that would tend to indicate that this was a concerted attack." The trial court found that McFail struck Paris "in the back of the head, after she had been struck by a number of other people." The court rejected McFail's claim that he was intervening to stop the fight and instead found that he was "right in the midst of it." McFail now appeals his conviction.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. *Malice*

On appeal, McFail first argues that the evidence was insufficient to establish that he acted with malice.[1] The statute, however, does not require proof of malice for a conviction.

Code § 18.2-41 provides, "Any and every person composing a mob which shall maliciously *or unlawfully* shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disable, disfigure or kill him, shall be guilty of a Class 3 felony." (Emphasis added.) Malicious wounding by mob in Code § 18.2-41 is a different offense than malicious wounding in Code § 18.2-51. *Paiz v. Commonwealth*, 54 Va. App. 688, 698 (2009). "Malicious wounding by mob does not require the Commonwealth to prove malice because it defines the crime as 'maliciously or unlawfully [wounding] any person . . . with intent to maim, disable, disfigure or kill him . . . .'" *Id.* (alterations in original) (quoting Code § 18.2-41). "The disjunctive term 'or,' which separates the terms 'maliciously' and 'unlawfully,'

---

[1] McFail also argues that the evidence was insufficient to find that he acted with the intent to maim, disfigure, disable, or kill. He did not raise this argument in the trial court, however, and we will not now consider it on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

indicates that Code § 18.2-41 only requires proof that the wounding was unlawful." *Id.* Thus, as McFail conceded during oral argument, the Commonwealth was not required to prove malice if it proved unlawful wounding.

An unlawful wounding is "a legally unjustified wounding with the intent to maim, disfigure, disable, or kill." *Williams v. Commonwealth*, 64 Va. App. 240, 248 (2015). First, McFail did not argue below that the evidence was insufficient to show unlawful wounding. *See* Rule 5A:18. Nor did he raise that argument, on brief or during oral argument, in this Court. And second, we find that the evidence was sufficient to prove that it was an unlawful wounding. The video of the incident shows that McFail actively participated in the beating of Paris. Paris sustained approximately 25 to 30 blows to vulnerable parts of her body, including her head and torso. This was a concerted attack by multiple people against one individual, and the beating continued while the victim was in a headlock. Thus, the video evidence was more than sufficient to establish an unlawful wounding and sustain the conviction.

### C. *Mob*

McFail also argues on appeal that the evidence was insufficient to support his conviction for maiming by mob because the Commonwealth did not establish that he acted as a member of a mob. Because there was no evidence of how the fight started, McFail maintains there was no basis to conclude that a mob formed that evening. We disagree.

"A 'mob' is statutorily defined as '[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in [Code] § 19.2-297.1[.]'" *Barnett v. Commonwealth*, 73 Va. App. 111, 118 (2021) (alterations in original) (quoting Code § 18.2-38). "Not every incidence of group violence or assaultive conduct which involves a number of people collectively involved in assaultive conduct constitutes a 'mob' assault and battery." *Harrell v. Commonwealth*, 11 Va. App. 1, 7 (1990).

"An otherwise lawful assembly of people can become a 'mob' simply by adopting an unlawful intent to commit violence." *Johnson v. Commonwealth*, 58 Va. App. 625, 634 (2011). "Whether a group of individuals has been so transformed into a 'mob' depends upon the circumstances; no particular words or express agreements are required to effect a change in a group's purpose or intentions." *Johnson v. Commonwealth*, 58 Va. App. 303, 320 (2011) (quoting *Harrell*, 11 Va. App. at 7-8). "Events or emotionally charged circumstances suddenly may focus individuals toward a common goal or purpose without an express or stated call to join forces." *Id.* "The impulsive and irrational forces that may exist to transform peaceable assembly into mob violence are to be evaluated on a case-by-case basis." *Id.*

The trial court specifically found that McFail was not credible and credited the Commonwealth's version of events. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Additionally, the "conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)).

The Commonwealth's evidence established that one month before the brawl, the police arrested Naseem, McFail's cousin and fellow gang member. McFail, his family, and friends believed that Paris had set up Naseem. Thus, the evidence established that the attackers held animosity towards Paris because of her involvement in Naseem's arrest.

Additionally, the evidence established that shortly after McFail, his siblings, and cousin arrived at a gathering where Paris was present, a fight broke out. The fight involved members of

the street gang T4L, their associates, and Paris. The video depicts multiple individuals striking Paris at the same time. McFail was one of the individuals who attacked Paris. Although McFail claimed he entered the fight to stop the violence, the trial court found that McFail joined the fray to contribute to the beating of Paris. The trial court was "entitled to disbelieve the self-serving testimony of [McFail] and to conclude that [he] [wa]s lying to conceal his guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).

Furthermore, during the incident, McFail stated, "I'll die behind Nine, on my set." Investigator King explained that "Nine" referred to Naseem and "on my set" meant that McFail was swearing an oath. Furthermore, Xavier stated that "[i]f they touch my sister, I'm going to bust them." Considering McFail and Xavier's statements, the trial court, as the finder of fact, was permitted to find that the group shared an intent to wound Paris. While the gathering may have originally been for a lawful purpose, the evidence was sufficient to establish that McFail and his associates adopted the "unlawful intent to commit violence." *Johnson*, 58 Va. App. at 634. Thus, the evidence was sufficient to prove beyond a reasonable doubt that McFail acted as part of a mob.

## III. CONCLUSION

We find that the evidence was sufficient to convict McFail of malicious wounding by mob. Accordingly, we affirm the trial court's decision.

*Affirmed*.